**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEUTSCHE BANK AG, NEW YORK BRANCH, | ) | CASE NO. 1:25-cv-2332 |
| | ) | |
| | ) | JUDGE CHARLES E. FLEMING |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HH CLEVELAND HUNTINGTON, L.P., *et al.*, | ) | **MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR APPOINTMENT OF RECEIVER** |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the Court is Plaintiff Deutsche Bank AG, New York Branch's Emergency Motion to Appoint Receiver ("Receiver Motion") (ECF No. 1-3). Defendants HH Cleveland Huntington, L.P. and Frank Sinito filed an opposition, (ECF No. 20-1), and Plaintiff a reply in support, (ECF No. 8-12). For the reasons discussed below, the Receiver Motion is **GRANTED IN PART**.

I.      **FACTUAL BACKGROUND**[1]

Defendant HH Cleveland Huntington, L.P. (the "Borrower") is an Ohio limited partnership who is the fee owner of the real property located at 925 Euclid Avenue, Cleveland, Ohio (PPN 101-36-001, 101-36-002, 101-36-013) ("Property"). (ECF No. 1-1, PageID #13–16, ¶¶ 2, 6; ECF No. 1-3, PageID #304). On July 1, 2021, Plaintiff and the Borrower entered into a Loan Agreement under which Plaintiff agreed to make a loan to the Borrower in the amount of $35,422,000 ("Loan Amount") for the purpose of converting the Property into a multifamily apartment housing facility (the "Project"). (ECF No. 1-1, PageID #16, ¶ 11; ECF No. 1-3, PageID #349–94). The Borrower

---

[1] The facts in this section are undisputed and set forth in Plaintiff's complaint, Receiver Motion, and the various exhibits attached to those filings.

executed a Promissory Note for the Loan Amount dated July 15, 2021 ("Note").  (ECF No. 1-1, PageID #16–17, ¶ 12; ECF No. 1-3, PageID #407–24).

The Note is secured by: (i) a Guaranty dated July 1, 2012 ("Guaranty") that was executed by Defendant Sinito, (ECF No. 1-3, PageID #618–28); and (ii) a Mortgage, Assignment of Rents and Leases, Security Agreement and Fixture Filing on the Property dated July 1, 2021 ("Mortgage") that was executed by the Borrower, (*id.* at PageID #630–62).  (ECF No. 1-1, PageID #27, 29, ¶¶ 28, 35).  The Loan Agreement and Note were amended two times on November 15, 2021 and October 19, 2022, to extend and amend several loan payment, interest payment, and maturity deadlines.  (ECF No. 1-1, PageID #17, ¶¶ 13–14; ECF No. 1-3, PageID #307–09, 426–38).

On April 13, 2023, Plaintiff, the Borrower, and Sinito entered into a Forbearance Agreement ("First Forbearance Agreement"), wherein the Borrower and Sinito acknowledged that certain "Events of Default" had occurred and were continuing to occur under the "Loan Documents" (defined as the Loan Agreement, Note, Mortgage, Guaranty, and other ancillary documents, agreements, and instruments),[2] which included the Borrower's failure to make required down payments, loan payments, and interest payments, and the failure to satisfy the Loan Amount by the March 21, 2023 maturity date.  (ECF No. 1-3, PageID #457–58).  Plaintiff, the Borrower, and Sinito went on to enter four additional forbearance agreements on June 27, 2023, September 27, 2023, January 17, 2024, and July 8, 2024, respectively.  (*Id.* at PageID #311–17; 457–84, 546–612).  In the Fifth Forbearance Agreement, the Borrower and Sinito acknowledged that: (i) the aggregate indebtedness under the Loan Documents was $29,609,883.77; (ii) certain Events of Default had occurred and were continuing to occur under the Loan Documents; and

---

[2] (ECF No. 1-3, PageID #463).

(iii) the Borrower and Sinito had failed to timely and fully perform all the conditions of the Fourth Forbearance Agreement. (*Id.* at PageID #578–80). Plaintiff agreed to forbear and modify the Borrower's payment obligations in certain ways and under certain conditions until 11:59 pm on February 1, 2025 (*id.* at PageID #546–76). (ECF No. 1-1, PageID #25; ECF No. 1-3, PageID #580–84).

The Borrower and Sinito failed to meet their obligations under the Fifth Forbearance Agreement. (ECF No. 1-1, PageID #25–26, ¶¶ 21–22). As of September 30, 2025, Plaintiff is currently owed more than $33,000,000 on the Note and Mortgage (principal, accrued interest, default interest, expenses, and fees) under the terms of the Loan Documents. (ECF No. 1-1, PageID #27, ¶ 25; ECF No. 1-3, PageID #318).

## II.  PROCEDURAL BACKGROUND

On September 30, 2025, Plaintiff filed a complaint in the Cuyahoga Court of Common Pleas against the Borrower, Sinito, the County of Cuyahoga, and Brad Comes, as Treasurer of Cuyahoga County. (ECF No. 1-1). The complaint asserts six causes of action: (i) breach of contract against the Borrower as to the Note (Count One); (ii) breach of contract against Sinito as to the Guaranty (Count Two); (iii) commercial foreclosure (Count Three); (iv) assignment of leases and rents (Count Four); (v) possession of collateral under security agreement (Count Five); and (vi) appointment of a receiver (Count Six). (*Id.* at PageID #16–32).

The same day, Plaintiff filed the Receiver Motion, seeking the appointment of a receiver under the terms of Mortgage and Loan Agreement. (ECF No. 1-3).[3] On October 8, 2025, the state court set a hearing on the Receiver Motion for October 30, 2025. Journal Entry, *Deutsche Bank AG, New York Branch v. HH Cleveland Huntington, L.P.*, No. CV-25-125588 (Cuyahoga Cnty.

---

[3] Mot. for Emergency Appointment of Receiver, *Deutsche Bank AG, New York Branch v. HH Cleveland Huntington, L.P.*, No. CV-25-125588 (Cuyahoga Cnty. Ct. of Comm. Pleas Oct. 1, 2025).

Ct. of Comm. Pleas Oct. 8, 2025).  On October 20, 2025, the Borrower and Sinito [hereinafter, the "Borrowers"] filed a brief in opposition to the Receiver Motion.  (ECF No. 20-1).  Plaintiff filed its reply in support of the Receiver Motion on October 28, 2025.  (ECF No. 8-12).

On October 29, 2025, the Borrowers removed this action to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a).  (ECF No. 1).  After removal, Cuyahoga County filed a response in support of the Receiver Motion.  (ECF No. 12).  On December 22, 2025, the Court held a Motion Hearing as to the Receiver Motion where the testimony of Charles Seymour was taken and certain Plaintiff's exhibits were admitted.  (Minutes of proceedings [non-document] dated Dec. 22, 2025).

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 66 permits a district court to appoint a receiver in accordance "with the historical practice in federal courts or with a local rule."[4]  A "district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court.'  *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006).  "The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary."  *Id.*  "A receivership is an 'extraordinary remedy' that a court should employ with the 'utmost caution' and grant 'only in cases of clear necessity to protect

---

[4] Although neither party raised it is an issue, the Court finds that it must analyze whether to appoint a receiver in this removed action under federal law because, "[a]lthough the Sixth Circuit itself has not addressed the issue, the weight of authority suggests that appointment of a receiver in a diversity action is controlled by federal law, not state law." *Fed. Nat. Mortg. Ass'n v. Mapletree Invs. Ltd. P'ship*, No. 10-cv-10381, 2010 U.S. Dist. LEXIS 42420, at *5 (E.D. Mich. Apr. 30, 2010) (collecting cases); 12 *Wright & Miller's Federal Practice & Procedure* § 2983 (3d ed.) ("Whether a federal court should appoint a receiver in a diversity action appears to be a question properly determined on the basis of federal law.")

plaintiff's interests in the property.'" *Pension Ben. Guar. Corp. v. Evans Tempcon, Inc.*, 630 F.

App'x 410, 414 (6th Cir. 2015) (quoting 12 *Wright & Miller's Federal Practice & Procedure*

§ 2983 (3d ed.)).

District courts in the Sixth Circuit have considered the following factors when determining

whether the appoint a receiver:

> (1) the adequacy of the security; (2) the financial position of the borrower; (3) any
> fraudulent conduct on the defendant's part; (4) imminent danger of the property
> being lost, concealed, injured, diminished in value, or squandered; (5) inadequacy
> of legal remedies; (6) the probability that harm to the plaintiff by denial of
> appointment would outweigh injury to parties opposing appointment; (7) the
> plaintiff's probable success in the action and the possibility of irreparable injury to
> the plaintiff's interest in the property; and (8) whether the plaintiff's interests
> sought to be protected will in fact be well-served by a receivership.

*PNC Bank, Nat'l Ass'n v. Goyette Mech. Co.*, 15 F. Supp. 3d 754, 758 (E.D. Mich. 2014); *see also*

*Fannie Mae v. Sunrise Villas, LLC*, No. 2:25-cv-2217, 2025 LX 249769, at *9 (W.D. Tenn. June

27, 2025); *Fannie Mae v. Hatz One LLC*, No. 1:24-cv-1606, 2025 LX 250278, at *7 (N.D. Ohio

Feb. 28, 2025).  District courts in the Sixth Circuit also consider advance consent to a receiver as

another factor.  *Fannie Mae v. Hatz One LLC*, No. 1:24-cv-1606, 2025 LX 250278, at *7 (citing

*PNC Bank, N.A. v. Mktg. Goldmines Consulting LLC*, No. 20-cv-10672, 2021 U.S. Dist. LEXIS

604, *6, 2021 WL 21762 (E.D. Mich. Jan. 4, 2021)); *PNC Bank*, 15 F. Supp. 3d at 758.

## IV.    ANALYSIS

### A.    Relevant Factors for Appointment of a Receiver

To begin, the Court notes that the parties' briefing does not directly address the factors

discussed above.  Plaintiff's brief essentially focuses on the factors of likelihood of success and

advance consent, primarily arguing that: (i) Ohio law allows for appointment of a receiver in a

commercial foreclosure where a party is in default and has consented to appointment of a receiver;

(ii) the Borrowers are in default of the Mortgage and Loan Documents; and (iii) the Mortgage

expressly grants Plaintiff the right to appoint a receiver in the case of such a default. (ECF No. 1-3, PageID #325–30). Plaintiff also provides arguments as to imminent danger of the Property being injured and diminished in value. (*See id.* at PageID #330–32). The Borrowers oppose the appointment of a receiver by arguing that Plaintiff has not demonstrated: (i) imminent danger to the Property or irreparable harm; and (ii) that the appointment of a receiver is necessary to protect Plaintiff's rights in the Property. (ECF No. 20-1, PageID #1115–20). Having reviewed the parties' briefing, and the issues raised during the Motion Hearing, the Court will analyze the relevant factors.

### 1. Adequacy of the Security and Financial Position of the Borrower

Neither party provides explicit arguments on these first two factors. That said, Plaintiff makes allegations that the Borrowers are in a poor financial position. Plaintiff points to another company associated with Sinito recently defaulting on a $52 million commercial loan, (ECF No. 1-3, PageID #305 & n.1), and specifically highlights the Borrowers' inability to finance the Project or maintain the Property, (*id.* at PageID #318–24). The Borrowers have not responded to these accusations about their poor financial condition. Moreover, the fact that the Borrowers have been in default under the Loan Documents for several years, they have been unable to meet their financial obligations under the Loan Documents, and they have been unable to meet the financial benchmarks set forth in the various forbearance agreements, tends to demonstrate a poor financial position. As such, this factor weighs in favor of appointing a receiver.

### 2. Fraudulent Conduct of the Borrowers

The complaint and Receiver Motion make no allegations of fraudulent conduct by the Borrowers with relation to this case. Thus, this factor is not relevant to this case and does not support the appointment a receiver.

3. *Danger to the Property*

Plaintiff argues that the Borrowers have failed to maintain the Property, deferred necessary maintenance, and failed to fix significant deficiencies which expose the Property to deterioration and further diminishment in value.  Plaintiff points to evidence of various deferred maintenance items identified by the Marous Brothers Construction during inspections carried out in November 2022 and August 2023, which relate to roof leaks, standing water, mold, broken building systems, and portions of the Property being open to the elements.  (ECF No. 1-3, PageID #321–24, 595–612).  Plaintiff further points to the Fifth Forbearance Agreement, wherein the Borrowers agreed that these deferred maintenance items would be completed by July 15, 2024.  (*Id.* at PageID #324, 582–83).  Plaintiff notes that the Borrowers' representatives submitted a September 17, 2025 letter stating that roof repairs and other maintenance items had been completed but argues that this letter does not: (i) provide written proof of completion from a contractor, as required under the Fifth Forbearance Agreement; and (ii) did not provide any other proof that the items were actually completed.  (*Id.* at PageID #324, 343).

The Borrowers' brief does not address Plaintiff's allegations of deferred maintenance items, nor does it argue that there is no risk of injury to, or diminishment of value of, the Property if a receiver is not appointed.  At the Motion Hearing, the Borrowers presented no evidence to demonstrate that the alleged deferred maintenance items had been corrected or that Plaintiff's allegations of damage to the Property and maintenance issues are unfounded.  Considering the record evidence, the Court finds that there is an imminent danger of injury to the Property if a receiver is not appointed.  Thus, this factor weighs in favor of appointing a receiver.

### 4.    *Inadequacy of Legal Remedies*

Neither party discusses the inadequacy of other legal remedies and whether they would sufficiently protect Plaintiff's interest in the Property.  Thus, the Court will treat this factor as neutral.

### 5.    *Balance of Harm to Plaintiff vs. Injury to the Borrowers*

Plaintiff argues that it will suffer an injury to its interest in the Property if a receiver is not appointed.  The Borrowers' opposition does not allege any specific injury that would result from the appointment of a receiver.  At the Motion Hearing, the Borrowers cross-examined Mr. Seymour about certain tax credits awarded to the Project and how a appointment of a receiver might negatively affect the value of the Property.  However, this line of questioning did not establish that the Borrowers or the Property would suffer any injury or harm directly related to the appointment of a receiver.  They also did not sufficiently establish that the relevant tax credits would not stay with the Property after it was sold to another owner.  Nor did the Borrowers provide any evidence on this issue.

The Court finds that there would be minimal harm to the Borrowers should it appoint a receiver in this straightforward commercial-foreclosure action.  As noted in another case in the Northern District of Ohio: "Appointment of a receiver is not a substantive right, but is a remedy that is ancillary to the primary relief, in this case, foreclosure.  Appointment does not have a direct effect on the final outcome of the suit. Therefore, [a defendant's] substantive rights remain unaffected by the appointment." *Resol. Tr. Corp. v. Fountain Circle Assocs. Ltd. P'ship*, 799 F. Supp. 48, 52 (N.D. Ohio 1992).  Also, as discussed later in this order, the Borrowers consented to the appointment of a receiver in the event of default—with the Borrowers not contesting advance consent nor the presence of default.  As other courts have found, "[w]here a mortgage or other

agreement specifically provides for the appointment of a receiver upon default, there can be little hardship in enforcing the terms of the parties' bargain." *Citizens Bank v. Cedar Fairmount Realty, Ltd.*, No. 1:11-cv-1492, 2011 U.S. Dist. LEXIS 165031, at *19–20 (N.D. Ohio Dec. 9, 2011) (citing *Fannie Mae v. Maple Creek Gardens*, LLC, No. 09-14703, 2010 U.S. Dist. LEXIS 5342, at *9 (E.D. Mich. Jan. 25, 2010); *N.Y. Life Ins. Co. v. Watt W. Inv. Corp.*, 755 F. Supp. 287, 293 (E.D. Cal. 1991)); *see also Fannie Mae v. Mapletree Inv'rs Ltd. P'ship*, No. 10-cv-10381, 2010 U.S. Dist. LEXIS 42420, at *14 (E.D. Mich. Apr. 30, 2010) ("The Court also finds that not appointing a receiver would cause extreme harm to Fannie Mae, but would not harm Mapletree in the slightest.  Mapletree agreed to not contest receivership appointment and there is little harm in enforcing the terms of the parties' bargain.").

Finally, it is also hard to imagine any harm befalling the Borrowers when, as discussed in the following section, Plaintiff has established a high likelihood of success on the merits and entitlement to foreclosure on the Property.  Accordingly, the Court finds that this factor weighs in favor of appointing a receiver.

6.      *Plaintiff's Probability of Success*

The Court finds that Plaintiff has established a high likelihood of success on the merits in this action.  Plaintiff has provided evidence establishing, and the Borrowers do not dispute, that the Borrowers failed to perform under the Mortgage and Loan Documents, the Note has matured, the Borrowers have been in default since April 2023, and the Borrowers admitted to being in default under the Loan Documents in five, separate forbearance agreements.  The Borrowers have failed to provide any arguments or evidence to the contrary.  As such, the Court finds this factor weighs heavily in favor of appointment of a receiver.

7.      *Whether Plaintiff's Interests will be Protected and Served by a Receiver*

Although Plaintiff does not provide direct arguments as to this factor, based on the above discussion and Plaintiff's general arguments, the Court finds that appointment of a receiver will protect and serve Plaintiff's interest in the Property and in this case.  Notably, the Borrowers have provided no argument to the contrary.  Thus, the Court finds that this factor weighs in favor of appointment of a receiver.

8.      *Consent*

The Mortgage contains the following provision concerning appointment of a receiver:

Section 3.05. Appointment of Receiver. Upon the occurrence and during the continuance of an Event of Default (provided that the Mortgagee shall have no obligation to accept a cure of any Event of Default except as required by law), the Mortgagee may apply for the appointment of a receiver of the Premises and/or the Rents, without notice except as required by law, and shall be entitled to the appointment of the receiver as a matter of right, without consideration of the value of the Premises, the solvency of any person liable for the payment of the Secured Obligations, or the effect of the receivership on the operation of the Premises or the Mortgagor's business thereon.

(ECF No. 1-3, PageID #630–662).  Plaintiff argues that the Borrower is in default under the Mortgage and "expressly consented to the appointment of a receiver over the Property as a matter of right in the event of a default and likewise waived its ability to insist on any sort of proof or justification for the receivership beyond the proof of a breach, . . ."  (ECF No. 1-3, PageID #330). The Borrowers offer no argument on the issue of consent.

The Court notes that there is a split of authority on the weight given to this factor.  Some courts have held that advance consent is dispositive and sufficient to warrant appointment of a receiver.  *See, e.g.*, *Britton v. Green*, 325 F.2d 377, 382 (10th Cir. 1963) (holding that a mortgagee was entitled to appointment of a receiver where the parties had a mortgage agreement that entitled the mortgagee to a receiver); *Maple Creek Gardens, LLC*, 2010 U.S. Dist. LEXIS 5342, *7 ("This

Court believes that Maple Creek's agreement in the Mortgage to the appointment of a receiver upon its default alone is sufficient to conclude that Fannie Mae is entitled to such an appointment at this time").  While the majority of courts hold that, although not dispositive, advance consent is a factor that is entitled to great weight.  *See, e.g.*, *Goyette Mech. Co.*, 15 F. Supp. 3d at 758 ("Moreover, the parties' advance consent to the appointment of a receive is a strong factor weighing in favor of appointing one."); *Mapletree Inv.*, 2010 U.S. Dist. LEXIS 42420, 2010 WL 1753112, at *3 ("In the absence of clear authority on the issue the Court will err on the side of caution and consider the parties' consent as a strong factor weighing in the plaintiff's favor, but not dispositive of the inquiry."); *KS Statebank Corp. v. Peters*, No. CV-25-02576-PHX-ROS, 2025 LX 598118, at *20 (D. Ariz. Nov. 26, 2025) ("Though not dispositive, an agreement between parties expressly authorizing the appointment of a receiver is a factor entitled to 'great weight' in favor of appointment."); *Stonebridge Bank v. NITA Props., LLC*, 2011 U.S. Dist. LEXIS 59078, at *6 (D.N.J. June 1, 2011) ("[A]lthough not dispositive, the fact that [the non-movant] consented to receivership in the [mortgage agreement] heavily favors appointment of a receiver."); *Sterling Sav. Bank v. Citadel Dev. Co., Inc.*, 656 F. Supp. 2d 1248, 1260 (D. Or. 2009) (citing *Watt West Inv. Corp.*, 755 F. Supp. at 292) ("Consent by the parties in a deed of trust is a factor that commands great weight, but it is not dispositive.").

The Court will not treat advance consent as dispositive, but will side with the majority of authority and treat this factor as entitled to significant weight.  Given the undisputed default and consent to appointment of a receiver, this factor weighs heavily in favor of appointment a receiver. Considering all of the above factors, and with most weighing in favor of appointment (including the heavily weighted factor of advance consent), the Court finds that Plaintiff has established that the immediate appointment of a receiver is warranted and shall grant the request.

### B.    Requested Receiver

Plaintiff also requests that the Court appoint John Lane and Inglewood Associates as the receiver.  (ECF No. 1-3, PageID #332–33).  While the Borrowers opposed the Receiver Motion, they have provided no specific opposition to the qualifications or appoint of John Lane as receiver. Having reviewed the qualifications of Plaintiff's proposed receiver (ECF No. 1-3, PageID #778– 91), the Court finds Mr. Lane qualified and shall appoint him as receiver.

### C.    Additional Requests

The Receiver Motion also requests that Court authorize the appointed receiver to engage Christopher W. Peer of Wickens Herzer Panza as counsel and Gordon Brothers Realty Services, LLC as a sales agent.  (ECF No. 1-3, PageID #333).  The Court **DENIES WITHOUT PREJUDICE** these requests for engagement.  After his appointment, the receiver may file any such requests as he deems appropriate, at which time the Court shall rule on the requests after full consideration.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's Emergency Motion to Appoint Receiver (ECF No. 1-3) is **GRANTED IN PART**.  An appropriate order shall issue.

**IT IS SO ORDERED.**

Date: January 9, 2026

_____
**CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**