## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **DEUTSCHE BANK AG,** <br> **NEW YORK BRANCH** | ) <br> ) <br> ) | **CASE NO.:  Case: 1:25-CV-02332** |
| Plaintiff, | ) <br> ) <br> ) | **JUDGE CHARLES E. FLEMING** |
| **v.** | ) <br> ) | |
| **HH CLEVELAND HUNTINGTON,** <br> **L.P., et al.** | ) <br> ) <br> ) <br> ) | **DEFENDANT'S H.H. CLEVELAND** <br> **HUNTINGTON, L.P. AND FRANK T.** <br> **SINITO'S BRIEF IN OPPOSITION TO** <br> **RECEIVER'S MOTION FOR (I) SALE OF** |
| Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | **RECEIVERSHIP PROPERTY; (II)** <br> **ACKNOWLEDGE CREDIT BID RIGHTS;** <br> **AND (III) SET SALES PROCEDURES TO** <br> **FACILITATE REQUESTED SALE** |
| | ) <br> ) | **(ORAL HEARING REQUESTED)** |

Now come Defendants HH Cleveland Huntington, L.P. ("Borrower") and Frank T. Sinito ("Sinito") (collectively, "Defendants"), by and through their undersigned counsel, and hereby submit their *Brief in Opposition to Receiver's Motion for (I) Sale of Receivership Property; (II) Acknowledge Credit Bid Rights; and (III) Set Sales Procedures to Facilitate Requested Sale,* a copy of which is attached hereto and incorporated herein by reference. Defendants respectfully request an Oral hearing on the within matter, pursuant to R.C. 2735.04(D)(2)(c).

Respectfully submitted,

/s/ *Larry W. Zukerman*
LARRY W. ZUKERMAN, Esq. (0029498)
S. MICHAEL LEAR, Esq. (0041544)
ZUKERMAN, LEAR, MURRAY & BROWN, CO. L.P.A.
3912 Prospect Avenue East
Cleveland, Ohio 44115
(216) 696-0900 | fax: (216) 696-8800
lwz@zukerman-law.com
sml@zukerman-law.com
*Counsel for Defendants HH Cleveland Huntington,*
*L.P. and Frank T. Sinito*

1

**BRIEF IN OPPOSITION**

I.    **INTRODUCTION**

Receiver has moved this Court for an Order that, among other things, sets forth the procedures that will apply to Receiver's requested sale of the Property. Despite not identifying the statutory support for Receiver's motion, Receiver's motion is clearly filed pursuant to R.C. 2735.04(D)(2).

R.C. 2735.04(D) provides several procedural safeguards that this Court can, and should, include in any Order that it may issue pursuant to Receiver's motion, including:

- Before entering an order authorizing the sale of the property by the receiver, the court may require that the receiver provide evidence of the value of the property; and/or

- In a public or private auction, the court may establish a minimum bid;

Further, R.C. 2735.04(D) includes certain statutory pre-requisites that are not accounted for in Receiver's motion, including:

> (b)    At least ten days' prior written notice is given in accordance with the Rules of Civil Procedure to all of the owners of the real property, all parties to the action, and all other persons with a recorded or filed lien encumbering the real property to be sold as those persons are identified in a preliminary judicial report or a commitment for an owner's policy of title insurance previously filed with the court pursuant to section 2329.191 of the Revised Code or, if not previously filed, in a preliminary judicial report or a commitment for an owner's policy of title insurance filed with the application of the receiver for authority to sell the real property that otherwise complies with the requirements of section 2329.191 of the Revised Code, unless the lien or interest is barred by lis pendens pursuant to section 2703.26 of the Revised Code.

> (c)    An opportunity is given for a hearing at which all of the parties and persons to whom the notice is given under division (D)(2)(b) of this section may be heard, provided that if no such party or person objects to the proposed sale or requests a hearing within the period provided pursuant to that division, the court may proceed without a hearing.

2

> (d)     The court issues an order of sale of the real property that sets forth the required procedure for or the terms of the sale. The order of sale is the final appealable order with respect to the matters contained in the order.

*See, R.C. 2735.04(D).*

Further, R.C. 2735.04(D)(7) requires a Court that approves an application by a Receiver to sell real property under R.C. 2735.04(D)(2)(a) to "establish a reasonable time, but not less than three days, after the date of the order approving the specific sale or the sale process for the owner and all other parties possessing an equity of redemption in the real property to exercise their equity of redemption in the real property or to have that equity of redemption forever barred."

Receiver's motion contains other problematic proposed procedures, which will be addressed more fully below.

## II.      REQUEST FOR ORAL HEARING

As previously noted, Receiver's motion is clearly filed pursuant to R.C. 2735.04(D)(2)(i). For reasons more fully articulated throughout this *Brief in Opposition*, R.C. 2735.04 applies to Receiver's motion and R.C. 2735.04(D)(2)(c) states, in relevant part, that "[a]ny sale of real property under division (B)(5) of this section shall be made only after all of the following occur:

> (a)     An application is made by the receiver . . . that requests that the receiver be granted the authority to sell the specific real property and sets forth either of the following:

>> (i)     If the receiver has not received a specific offer for sale that the receiver desires to accept, the proposed procedures for the conduct of the sale;

>> * * *

> (b)     At least ten days' prior written notice is given in accordance with the Rules of Civil Procedure to all of the owners of the real property, all parties to the action, and all other persons with a recorded or filed lien encumbering the real property to be sold as those persons are identified in a preliminary judicial report or a commitment for an owner's policy of title insurance previously filed with the court pursuant to section 2329.191 of the Revised Code or, if not previously filed, in a

3

preliminary judicial report or a commitment for an owner's policy of title insurance filed with the application of the receiver for authority to sell the real property that otherwise complies with the requirements of section 2329.191 of the Revised Code, unless the lien or interest is barred by lis pendens pursuant to section 2703.26 of the Revised Code.

(c)      An opportunity is given for a hearing at which all of the parties and persons to whom the notice is given under division (D)(2)(b) of this section may be heard, provided that if no such party or person objects to the proposed sale or requests a hearing within the period provided pursuant to that division, the court may proceed without a hearing.

Accordingly, as R.C. 2735.04 clearly applies to the Receiver's motion, this Court must provide "[a]n opportunity" "for a hearing at which all of the parties and persons to whom the notice is given . . . may be heard". Defendants now respectfully assert their right to a hearing on Receiver's motion.

III.    <u>**OVERVIEW OF RECEIVER'S MOTION**</u>

In his *Motion,* Receiver seeks an Order:

    (1)    affirming that Receiver shall move forward to market and sell the Property (and setting a date for the Court to consider the Receiver's determination of the highest and best Bid);

    (2)    approving the credit bid rights of Plaintiff Deutsche Bank; and

    (3)    approving the Sales Procedures attached to his Motion as Exhibit 1.

In his motion, Receiver asserts that he, and Gordon Brothers Realty Services, LLC (hereinafter, "GB"), "recognize that a local entity (either via a potential purchaser, developer, or contractor) may be well-suited to ensure the maximization of the Property" and that "this is precisely why the Consulting Agreement entered into with GB and approved by this Court, expressly provides the sharing of fee (buyer's premium) for outside brokers, including, without limitation, a local broker". *See, Receiver's Motion, pg. 16.*

4

Further, Receiver asserts that Receiver's "evaluation and discretion regarding the highest and best bid for the Property is critical to ensure maximization for all interested stakeholders and parties" and Receiver "seeks this Court to set a date in mid-November 2026 for a hearing on the sale for Receiver to present his determined highest and best bid for the Property". *See, Receiver's Motion, pg. 17.*

Receiver asserts that "time is of the essence to commence and complete a sale process" given, in part, the "lack of revenue generation" and "deteriorating condition of the Property". *See, Receiver's Motion, pg. 19.*

Receiver thereafter moves this Court to issue an Order to:

(a) set and approve the proposed Bidding Procedures for the sale of the Property (including a form of Asset Purchase Agreement);

(b) approve the proposed form and manner of notice of the identification and naming of a Stalking Horse Bidder;

(c) approve the proposed form and manner of notice of the Auction and Sale;

(d) schedule the Auction of the sale of the Property;

(e) schedule a final hearing on the sale of the Property to the Successful Bidder(s) at the Auction;

(f) authorize the Receiver to use the Sales Procedures and his business judgment (in consultation with his professionals and Deutsche Bank (so long as Deutsche Bank is not a potential Bidder) to determine the highest and best offer and opportunity for the Property; and

(g) granting related relief.

*See, Receiver's Motion, pp. 19 - 20.*

For the reasons more fully set forth herein, Defendants H.H. Cleveland Huntington, L.P., and Sinito hereby submit their *Brief in Opposition.*

**IV.     DEFENDANTS ASSERT THAT RECEIVER'S MOTION TO MOVE FORWARD WITH MARKETING AND SELLING THE PROPERTY IS PREMATURE AND/OR WILL NOT MAXIMIZE THE VALUE OF THE PROPERTY**

Defendants respectfully oppose and object to Receiver's motion because Defendants believe that said motion is premature. Defendants respectfully assert that a sale of the property at this time and/or pursuant to Receiver's proposed Sale Procedures may compromise tax credits that add value to the property and, accordingly, a sale pursuant to Receiver's proposed timeline may not maximize the value of the property.

**V.     RECEIVER FAILS TO IDENTIFY ANY PROCEDURE TO DETERMINE, OR PROVIDE ANY EVIDENCE OF, THE VALUE OF THE PROPERTY. THIS COURT CAN, AND SHOULD, ISSUE AN ORDER PURSUANT TO R.C. 2735.04(D)(1)(b) REQUIRING THAT THE RECEIVER PROVIDE EVIDENCE OF THE VALUE OF THE PROPERTY**

Receiver has proposed a detailed "Sales Procedures" process, but has failed to identify a procedural safeguard by which this Court can determine the value of the Property.

R.C. 2735.04, entitled *Powers of receiver,* states, in relevant part:

> (D)(1)(a)     Subject to the approval and supervision of the court and the requirements of this section, a receiver may sell property free and clear of liens by private sale pursuant to a written contract between the receiver and the prospective purchaser, by private auction, by public auction, or by any other method that the court determines is fair to the owner of the property and all other parties with an interest in the property, is reasonable under the circumstances, and will maximize the return from the property to the receivership estate, taking into account the potential cost of holding and operating the property.
>
> (b)     Before entering an order authorizing the sale of the property by the receiver, the court may require that the receiver provide evidence of the value of the property. That valuation may be provided by any evidence that the court determines is appropriate. In a public or private auction, the court may establish a minimum bid.
>
> (c)     If the receiver requests authority to sell the property pursuant to a prospective purchase contract and if warranted by the circumstances, the court may require that the receiver solicit and consider additional offers. If the receiver ultimately sells the property to a party other than the original proposed purchaser, if approved by the court, the receiver may pay to the

unsuccessful original proposed purchaser a reasonable amount of costs and expenses from the sale proceeds in an amount determined by the court to compensate that proposed purchaser for participation in the sale process to the extent that participation brought value to the receivership.

(2)     Any sale of real property under division (B)(5) of this section shall be made only after all of the following occur:

(a)     An application is made by the receiver or the first mortgage holder that requests that the receiver be granted the authority to sell the specific real property and sets forth either of the following:

(i)     If the receiver has not received a specific offer for sale that the receiver desires to accept, the proposed procedures for the conduct of the sale;

(ii)     If the receiver has received a specific offer for sale that the receiver desires to accept, the identity of the buyer and the proposed terms of the sale.

(b)     At least ten days' prior written notice is given in accordance with the Rules of Civil Procedure to all of the owners of the real property, all parties to the action, and all other persons with a recorded or filed lien encumbering the real property to be sold as those persons are identified in a preliminary judicial report or a commitment for an owner's policy of title insurance previously filed with the court pursuant to section 2329.191 of the Revised Code or, if not previously filed, in a preliminary judicial report or a commitment for an owner's policy of title insurance filed with the application of the receiver for authority to sell the real property that otherwise complies with the requirements of section 2329.191 of the Revised Code, unless the lien or interest is barred by lis pendens pursuant to section 2703.26 of the Revised Code.

(c)     An opportunity is given for a hearing at which all of the parties and persons to whom the notice is given under division (D)(2)(b) of this section may be heard, provided that if no such party or person objects to the proposed sale or requests a hearing within the period provided pursuant to that division, the court may proceed without a hearing.

(d)     The court issues an order of sale of the real property that sets forth the required procedure for or the terms of the sale. The order of sale is the final appealable order with respect to the matters contained in the order.

(3)(a)  If requested in the receiver's application for authority to sell the real property under division (D)(2)(a) of this section, upon a finding by the court after notice and an opportunity for a hearing as provided in divisions (D)(2)(b) and (c)

of this section that it is in the best interest of the receivership estate that the real property be sold free and clear of liens, the court may order that the real property be sold free and clear of all liens other than the lien of the treasurer of the county in which the real property is located for real estate taxes and assessments.

> (b)  In the event of a sale free and clear of liens, upon the recording of the deed from the receiver to the purchaser, those liens shall be canceled as to the real property and shall be transferred to the proceeds of the sale in the hands of the receiver with the same priority as those liens previously attached to the real property sold.

(4)  The sale of real property under division (D)(2) of this section is in lieu of a sale pursuant to Chapter 2329. of the Revised Code, and except as provided in division (D)(2)(b) of this section with respect to the applicability of section 2329.191 of the Revised Code and as provided in division (D)(9) of this section with respect to the applicability of section 2329.37 of the Revised Code, the provisions of Chapter 2329. of the Revised Code do not apply to a sale of real property under division (D)(2) of this section.

(5)  If the contemplated sale of real property is under division (D)(2)(a)(ii) of this section, the court may finally approve the sale, and no separate confirmation order is required.

(6)  If the contemplated sale of real property is under division (D)(2)(a)(i) of this section, following the sale or auction process described in the application, the receiver or first mortgage holder shall seek an order confirming the sale process and approving the proposed sale.

(7)  The court's order approving the application by a receiver or first mortgage holder for authority to sell real property under division (D)(2)(a) of this section shall establish a reasonable time, but not less than three days, after the date of the order approving the specific sale or the sale process for the owner and all other parties possessing an equity of redemption in the real property to exercise their equity of redemption in the real property or to have that equity of redemption forever barred. Section 2329.33 of the Revised Code does not apply to a sale by a receiver under this section.

(8)(a)  Until the date the court sets for the termination of the fee owner's time to redeem the real property, any fee owner of the real property proposed to be sold may redeem the real property from the sale by paying to the receiver by cashier's check or other form of immediately available funds an amount equal to the greater of the following:

> (i)  The sale price at which the real property was sold;

8

(ii)     An amount equal to the total of all liens upon the real property that were to be canceled as liens upon the real property by virtue of the sale, including all principal, interest, costs, and other amounts secured by those liens through the date of payment to the receiver.

(b)     The amount determined under division (D)(8)(a)(i) or (ii) of this section may include interest on the amount of the sale price at a rate that may be fixed by the court, from the date of the sale to the date of the payment of the full amount to the receiver.

(c)     Upon receipt of the amount determined under divisions (D)(8)(a) and (b) of this section, the receiver shall advise the court and all of the parties and persons to whom notice was given pursuant to division (D)(2)(b) of this section of the receipt of that amount and shall set aside the sale. The fee title to the real property shall remain in the name of the owner of the real property, and the liens upon the real property, except as provided in division (D)(3) of this section, shall be transferred in the same order of priority to the proceeds received by the receiver from the owner of the real property.

(9)     If the sale of the real property by the receiver under division (D)(2) of this section is conducted in accordance with the terms of the order of the court authorizing the sale, upon closing of the sale the receiver shall execute and deliver a receiver's deed for the real property sold to the purchaser. The receiver's deed has the effect provided for in section 2329.37 of the Revised Code.

As set forth above, R.C. 2735.04(D)(1)(a) provides, in relevant part, that a "receiver may sell property free and clear of liens . . . by any other method that the court determines is fair to the owner of the property *and all other parties with an interest in the property, is reasonable under the circumstances, and will maximize the return from the property to the receivership estate, taking into account the potential cost of holding and operating the property."* (Emphasis added).

Further, R.C. 2735.04 states, in relevant part that "[b]efore entering an order authorizing the sale of the property by the receiver, the court may require that the receiver provide evidence of the value of the property". See, R.C. 2735.04(D)(1)(b).

In his motion, Receiver seeks an Order from this Court authorizing the sale of the Property and setting forth certain procedures and processes that would guide and control the process by

which Receiver would sell the property. Receiver's motion is therefore a motion pursuant to R.C. 2735.04(D)(2)(a)(i), i.e., a motion made by the Receiver "that requests that the receiver be granted the authority to sell the specific real property and sets forth . . . the proposed procedures for the conduct of the sale.

Pursuant to R.C. 2735.04(D)(1)(a), this Court can - and should - require Receiver to "provide evidence of the value of the property", as permitted by R.C. 2735.04(D)(1)(b). Such an Order would permit this Court - and "all other parties with an interest in the property" (including Defendants) - to determine whether any future sale "is reasonable under the circumstances, and will maximize the return from the property to the receivership estate". *See*, R.C. 2735.04(D)(1)(a).

## VI. RECEIVER'S MOTION AND ATTACHMENTS DESCRIBE A PRIVATE SALE PROCESS, WHICH WOULD BE SUBJECT TO THE REQUIREMENTS SET FORTH IN 28 U.S.C. § 2001

The sale process outlined by Receiver in his motion clearly describes what would be a private sale process. 28 U.S.C. § 2001 sets forth certain procedural safeguards relating to the public auction or private sale of realty for "[a]ny realty or interest therein sold under any order or decree of any court of the United States". In relevant part, 28 U.S.C. § 2001(b) requires, in relevant part:

(1)     that "[b]efore confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities"; and

(2)     "[n]o private sales shall be confirmed at a price less than two-thirds of the appraised value"; and

(3)     "[b]efore confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation"; and

(4)     "[t]he private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale."

10

*See, 28 U.S.C. § 2001. But see, United States v. Scherer*, 532 F.Supp.3d 485 (2021), *contra.*

Accordingly, similar to the R.C. 2735.04(D)(1)(b) discretionary power to require the Receiver to provide evidence of the value of the property prior to any sale thereof, 28 U.S.C. 2001 provides a process that is clearly intended to assure that a sale of real property by a Receiver is in the best interests of the Receiver estate and/or will maximize the return from the property to the receivership estate.

## VII. RECEIVER'S MOTION SEEKS AN ORDER PERMITTING RECEIVER TO AMEND RECEIVER'S PROPOSED SALE PROCEDURES, WITHOUT MOTION AND BY PROVIDING NOTICE TO THE COURT AND TO THE PARTIES, IF RECEIVER NAMES AND IDENTIFIES A BIDDER TO SERVE AS STALKING HORSE BIDDER ON OR BEFORE THE STALKING HORSE IDENTIFICATION DEADLINE

Receiver has moved this Court for an Order adopting Receiver's proposed Sale Procedures. As part of Receiver's proposed Sale Procedures, Receiver seeks an Order permitting Receiver to name and identify a Stalking Horse Bidder.

Accordingly, in the event that Receiver names and identifies a Stalking Horse Bidder on or before September 15, 2026, pursuant to Receiver's proposed Sale Procedures, Receiver would be empowered and "entitled to amend these Sale Procedures **without motion and by providing notice to the Court and all parties known to have an interest in purchasing the Assets"**. *See, Receiver's motion, paragraph 55; Exhibit 1 to Receiver's motion, page 3.*

In such a circumstance, to what extent may the Receiver amend the Sale Procedures? That is not defined at all in Receiver's proposed Sale Procedures. Accordingly, Receiver's own proposed Sale Procedures essentially would give Receiver carte blanche authority to amend the Sale Procedures, so long as Receiver names and identifies a Stalking Horse Bidder on or before September 15, 2026.

11

Simply stated, Receiver is apparently intent on avoiding judicial oversight of the Sale Procedures, in the event that Receiver names and identifies a Stalking Horse Bidder on or by September 15, 2026. In such an event, the Receiver would be permitted to modify and/or amend the Sale Procedures as he sees fit.

Defendants accordingly object.

**VIII. RECEIVER'S MOTION SEEKS AN ORDER ADOPTING THE RECEIVER'S PROPOSED SALE PROCEDURES, WHICH INCLUDE THE USE OF A "STALKING HORSE BIDDER" AND WHICH INCLUDES A GRANT OF AUTHORITY TO RECEIVER AUTHORIZING RECEIVER TO NEGOTIATE A "BREAK UP FEE" AND AN "EXPENSE REIMBURSEMENT" TO A POTENTIAL STALKING HORSE BIDDER, WITHOUT INCLUDING ANY FACTUAL OR LEGAL SUPPORT JUSTIFYING THE USE OF A STALKING HORSE BIDDER AND/OR THE EXCESSIVE "BREAK UP FEE" AND "EXPENSE REIMBURSEMENT"**

Receiver's proposed Sale Procedures includes the use of a Stalking Horse Bidder and includes a grant of authority to Receiver to authorize Receiver to negotiate a significantly high "Break Up Fee" of "up to 3% of the purchase price for the Assets in the Stalking Horse Bid payable to Stalking Horse Bidder should Stalking Horse Bidder NOT be determined to have the highest and best bid and be named Successful Bidder". *See, Receiver's Exhibit 1, pg. 3.* Receiver also seeks authority to negotiate an "expense reimbursement" to the Stalking Horse Bidder of "up to $200,000". Despite these requested "Procedures", Receiver does not offer any legal or factual justification for the use of a Stalking Horse Bidder, nor does Receiver offer any legal or factual justification for seeking the ability to negotiate such a high "Break Up Fee" and "expense reimbursement".

"A stalking horse refers to an entity that is willing to place a bid on a debtor's asset in order to either set a baseline bid from which the true value of the estate can be assessed or serve as a catalyst to inspire other bidders." *In re: Energy Future Holdings Corp.,* 990 F.3d 728 (3rd Circuit

12

2021) (citing *In re Integrated Res., Inc.,* 135 B.R. 746, 750 (Bankr. S.D.N.Y.), *aff'd,* 147 B.R. 650

(S.D.N.Y. 1992); *In re: O'Brien Environmental Energy, Inc. v. O'Brien Environmental Energy,*

*Inc.,* 181 F.3d 527 at 537 (3rd Circuit 1999)). "[A]n initial bidder" in a bankruptcy proceeding may

"serve as a so-called `stalking horse,' whose initial research, due diligence, and ... bid may

encourage later bidders." *Matter of Walker County Hospital*, 3 F.4th 229 (5th Cir. 2021), at fn. 2

(quoting *In re ASARCO, L.L.C.,* 650 F.3d 593 (5th Cir. 2011)). *See also, Brown Media Corp. v. K*

*& L Gates, LLP,* 586 BR 508 (E.D. New York, 2018):

> A stalking horse bidder in a bankruptcy proceeding makes an initial bid to purchase
> the assets of a debtor on the theory that the initial bidder's "initial research, due
> diligence, and subsequent bid may encourage later bidders." *In re 310 Associates*,
> 346 F.3d 31, 34 (2d Cir. 2003). Stalking horse bidders often contract to receive a
> "break-up fee" compensating it for its bidding activities should a higher bid
> ultimately emerge and win an eventual asset auction. *See In re Integrated Res., Inc.,*
> 147 B.R. 650, 659 (S.D.N.Y. 1992).
> Id., at 518 (quoting *In re: MSR Resort Golf Course LLC,* 13-cv-2448, 2014 WL
> 67364, at *2 n. 3 (S.D.N.Y. Jan. 7, 2014).

"A break-up fee is 'a fee paid by a seller to a prospective purchaser in the event that a

contemplated transaction is not consummated.'" *In re ASARCO, L.L.C.*, 650 F.3d 593, at fn. 9

(quoting *O'Brien, supra,* at 528). Stalking Horse Bidder Break Up Fees were recently addressed

by the United States Bankruptcy Court, Eastern District, Wisconsin, in *In re: Wisconsin &*

*Milwaukee Hotel LLC, Chapter 11, Debtor*, United States Bankruptcy Court, E.D. Wisconsin,

Case No. 24-21743-gmh. In that case, the Court stated:

> At least some of the auction terms seem difficult to justify as a means of
> maximizing competition to buy the new equity. While slotting the current owner as
> the stalking horse bidder is plausibly justifiable as avoiding the costs of seeking out
> another candidate, the plan offers no insight into how the debtor justifies a $280
> thousand breakup fee under these circumstances. While breakup fees are a common
> feature of corporate mergers, those fees are typically justified as a means of
> compensating the stalking horse for its due-diligence costs on which later
> participants may free ride, mitigating the disincentive to incur costs in what might
> be an unsuccessful undertaking and deterring opportunistic bidding. *See Calpine*
> *Corp. v. O'Brien Env't Energy, Inc. (In re O'Brien Env't Energy, Inc.),* 181 F.3d

13

527, 535 (3d Cir. 1999). Why JSM would require additional compensation to serve as the stalking horse is not obvious, leading to a reasonable question about whether the breakup fee is instead serving to deter competition for the acquisition of the new equity interests rather than serving to maximize the net auction proceeds. *See In re S.N.A. Nut Co.*, 186 B.R. 98, 104 (Bankr. N.D. Ill. 1995) ("[B]ankruptcy courts should carefully scrutinize breakup fees to be sure that, following the underlying policy guiding § 363, revenues will be maximized."); *see also In re JW Res., Inc.*, 536 B.R. 193, 196 (Bankr. E.D. Ky. 2015) (approving a breakup fee but observing that "a break-up fee is not warranted if a signed asset purchase agreement will not benefit a proposed auction of a debtor's assets"); *Markell, Breakup Fees, supra*, at 386 ("Breakup fees in bankruptcy cases are an unwelcome importation from the non-bankruptcy world. A simple economic analysis illustrates that, except in rare circumstances, they do not cause otherwise unwilling bidders to make a firm bid. . . . The effect of [the procedural, substantive and policy differences between transactions outside of bankruptcy and § 363 sales] is that breakup fees, except in rare circumstances, waste estate assets.").

Here, Receiver has offered this Court no factual analysis justifying the use of a "Stalking Horse Bidder", nor has Receiver offered this Court any factual or legal justification for proposing to this Court a Sale Procedure that includes granting the Receiver authority to negotiate with a potential Stalking Horse Bidder a Break Up Fee of "up to 3% of the purchase price of the Assets in the Stalking Horse Bid", nor has Receiver offered this Court any factual or legal justification for also offering a Stalking Horse Bidder an expense reimbursement "of up to $200,000".  How does the excessively high potential Break Up Fee equate to compensating the Stalking Horse Bidder for its due-diligence expenses? Receiver offers nothing to justify such a high Break Up Fee.

Accordingly, Defendants assert that there is no justifiable necessity for the use of a Stalking Horse Bidder by Receiver herein, nor is there any justification for Receiver's request that this Court authorize Receiver the ability to negotiate with potential Stalking Horse Bidders a Break Up Fee of up to 3% of the purchase price of the Assets, nor is there any justification for Receiver's request that this Court authorize Receiver the ability to negotiate an expense reimbursement amount of "up to $200,000" to potential Stalking Horse Bidders.

14

Therefore, Defendants object to Receiver's Sale Procedures relating to the use of a Stalking Horse Bidder, as well as the proposed Break Up Fee of "up to 3% of the purchase price of the Assets in the Stalking Horse Bid", as well as the Stalking Horse Bidder proposed expense reimbursement "of up to $200,000".

**IX.**   **RECEIVER'S MOTION PERMITS DEUTSCHE BANK TO USE A CREDIT BID AND SERVE AS THE POTENTIAL "STALKING HORSE BIDDER", WHICH WOULD ENABLE RECEIVER TO NEGOTIATE A BREAK UP FEE OF UP TO 3% AND AN EXPENSE REIMBURSEMENT OF UP TO $200,000 WITH PLAINTIFF**

Receiver's motion seeks an Order acknowledging and permitting Plaintiff Deutsche Bank to credit bid. *See, Receiver's motion, paragraph 44.* Receiver's motion and the attached Exhibit 1 anticipates that Plaintiff Deutsche Bank, by use of its Credit Bid, can be a Qualified Bidder and, thus, the Stalking Horse Bidder: "[f]or avoidance of doubt, to any extent Deutsche Bank seeks to be a Bidder by use of its Credit Bid or otherwise, Deutsche Bank shall be considered a Qualified Bidder and submitting a Qualified Bid". See, Receiver's Exhibit 1, pg. 6, paragraph D. "At any time before the Stalking Horse Identification Deadline, Receiver, with the advice and consultation with Gordon Brothers and its other advisors and Deutsche Bank may, in his sole discretion, name a Stalking Horse Bidder, and negotiate bidder protections, including, but not limited to Break Up Fee and Expense Reimbursement, with such Qualified Bidder(s) to be Stalking Horse Bidder".

It should be noted that in his motion, Receiver has stated that "Plaintiff's basis for this action . . . [is] . . . an excess of $33,000,000 sought due to Borrower's default". Thus, if Plaintiff Deutsche Bank, using a Credit Bid, was named as the Stalking Horse Bidder and if Receiver authorized a 3% Break Up Fee, if Plaintiff failed to be the Successful Bidder, Plaintiff would be entitled to, among other relief, "3% of the purchase price for the Assets in the Stalking Horse Bid", which would amount to $990,000.00 if the Credit Bid is equivalent to $33,000,000. Under this

15

same scenario, Plaintiff would also be entitled to "an expense reimbursement of up to $200,000.00.

Accordingly, nothing in Receiver's proposed Sale Procedures prevents Plaintiff Deutsche Bank, using a Credit Bid, to be named and identified as the Stalking Horse Bidder.

Receiver offers no justification for seeking this Court to adopt Receiver's Sale Procedures, which, if adopted as proposed, would hypothetically enable Plaintiff to become the Stalking Horse Bidder on a Credit Bid, with a potential 3% Break Up Fee and $200,000 expense reimbursement, despite the fact that it is extremely unlikely that Plaintiff would incur due diligence expenses of anywhere near 3% of the sales price and/or $200,000 in expenses.

Simply stated, Defendants object to Receiver's proposed Sale Procedures and object to the use of a Stalking Horse Bidder. Defendants also object to the Receiver's ability to negotiate a Break Up Fee and/or expense reimbursement fee with Plaintiff, in the event that Plaintiff is named and identified as the Stalking Horse Bidder.

**X.      RECEIVER'S REQUESTED PROPOSED PROCEDURES FOR THE CONDUCT OF THE SALE OF THE PROPERTY MUST INCLUDE THE PROCEDURE FOR THE OWNER AND ALL OTHER PARTIES POSSESSING AN EQUITY OF REDEMPTION IN THE REAL PROPERTY TO EXERCISE THEIR EQUITY OF REDEMPTION IN THE REAL PROPERTY**

As noted above, Receiver's motion is, clearly, a motion filed pursuant to, and subject to, R.C. 2735.04(D)(2). In its previous January 9, 2026 *Order Appointing Receiver*, this Court specifically cited R.C. 2735.04 as its statutory foundation for granting Receiver "the following powers and duties", which includes the authority "[i]n accordance with R.C. § 2735.04(D), . . . [to] sell the Property". *See*, January 9, 2026 *Order Appointing Receiver,* ¶4(c).

R.C. 2735.04(D)(7) states:

> (7)      The court's order approving the application by a receiver or first mortgage holder for authority to sell real property under division (D)(2)(a) of this section shall establish a reasonable time, but not less than three days, after the date of the order approving the specific sale or the sale process for the owner and all other

16

parties possessing an equity of redemption in the real property to exercise their equity of redemption in the real property or to have that equity of redemption forever barred. Section 2329.33 of the Revised Code does not apply to a sale by a receiver under this section.

As can be seen, this statutory provision mandates that any future Order of this Court "approving the application of a receiver . . . for authority to sell real property under division (D)(2)(a) of this section" "shall establish a reasonable time, but not less than three days, after the date of the order approving the specific sale or the sale process for the owner and all other parties possessing an equity of redemption in the real property to exercise their equity of redemption in the real property or to have that equity of redemption forever barred."

Accordingly, any Order issued by this Court authorizing Receiver to sell the Property and setting forth proposed procedures for the conduct of the sale must include the statutorily required time period by which the owner and all other parties possessing an equity of redemption in the real property may exercise their equity of redemption.

## XI. THIS COURT, AND NOT THE RECEIVER, CAN - AND SHOULD - ESTABLISH ANY "MINIMUM BID" AMOUNT FOR THE PROPERTY

R.C. 2735.04(D)(1)(B) not only authorizes and empowers the Court to "require that the receiver provide evidence of the value of the property", it also authorizes and empowers the Court to "establish a minimum bid".

Defendants respectfully assert that judicial oversight over the sale process that Receiver has requested is imperative to maximize the return from the property to the receivership estate and is similarly crucial to assure that the sale process "is fair to the owner of the property and all other parties with an interest in the property". As part of this judicial oversight, Defendants hereby respectfully assert that this Court should not only require Receiver to provide evidence of the value of the property, but also should "establish the minimum bid".

17

**XII.**  **ON INFORMATION AND BELIEF,  NEITHER GORDON BROTHERS REALTY SERVICES, LLC, NOR ANY OF ITS EMPLOYEES OR IN-HOUSE AGENTS, ARE LICENSED PURSUANT TO R.C. 4735., ET SEQ.**

**A.**  **INTRODUCTION:**

On January 28, 2026, Receiver and Inglewood Associates filed an *Application to Appoint Gordon Brothers Realty Services, LLC as Exclusive Sales and Advisory Agent.* This application sought an Order from this Court authorizing the Receiver to engage the firm of Gordon Brothers "as his real estate sales consultant and advisory agent to provide certain consulting and advisory services (as more specifically described and detailed in the Consulting Agreement . . .) and in connection herewith, assist the Receiver in the evaluation and use of and potential disposition of substantially all of the assets of the Property and the Receivership (collectively, the "Assets")."

**B.**  **THE REAL ESTATE CONSULTING AND ADVISORY SERVICES AGREEMENT:**

Within the *REAL ESTATE CONSULTING AND ADVISORY SERVICES AGREEMENT,* in relevant part, the following is stated:

> **1.**  ***Consulting and Advisory Services.*** The Consultant shall provide consulting and advisory services (collectively, the "Services") to the Receiver with respect to the Assets, as follows:
>
> > (a)  Meeting with the Receiver to ascertain objectives, financial parameters, and goals for the sale or disposition of the Assets.
> >
> > (b)  Preparing and implementing a marketing plan to maximize value and negotiating with prospective purchasers.
> >
> > (c)  Soliciting bids from prospective purchasers of the Assets and coordinating diligence and term sheet negotiations with such bidders;
> >
> > (d)  Assisting the Receiver at any auctions of the Assets, as needed.
> >
> > (e)  Providing periodic reporting to the Receiver on the status of negotiations and marketing activities.

18

\* \* \*

**3.** **_Compensation._** As compensation for the Services, the Consultant will receive the following fees.

(a)     _Asset Dispositions._ In consideration of the Services, the Consultant shall earn and be paid a fee in an amount equal to six (6.0%) percent of the Gross Proceeds (defined below) of any Transaction (defined below) involving all or any portion of the Assets, which fee shall be paid to the Consultant in the form of a buyer's premium as soon as practical upon the closing of a Transaction (the "Buyer's Premium").

\* \* \*

v.      Consultant may, in its discretion and subject to Receiver's prior approval, engage a duly licensed local cooperating real estate broker (a "Cooperating Broker") to assist in providing the Services. Consultant may pay a Cooperating Broker up to a one and one-half percent (1.5%) fee out of the six percent (6.0%) buyer's premium payable to Consultant hereunder. For the avoidance of doubt, in no event shall the portion of the buyer's premium retained by Consultant, after taking into account fees paid to a buyer's broker and Cooperating Broker, be less than three percent (3.0%).

\* \* \*

**6.** **_Receiver Covenants._**

(a)     The Receiver shall make reasonably available to the Consultant all known information concerning the Assets, including but not limited to the Real Property, necessary for the performance of the Consultant's obligations hereunder and such other information as Consultant reasonably requests and which may be in the Receiver's possession or control. All information provided by the Receiver shall be materially accurate and complete at the time it is furnished and the Receiver shall, as soon as he becomes aware of any inaccuracy or incompleteness in any information then or later provided to the Consultant, promptly advise the Consultant in writing of such inaccuracy or incompleteness and correct the same.

(b)     The effectiveness of this Agreement is subject to and contingent upon the entry of (i) an order in form and substance acceptable to Consultant in its sole discretion, authorizing the

19

Receiver's entry into and approval of this Agreement, which the Receiver agrees to use the Receiver's best efforts to obtain (the "Retention Order"). The Appointment Order includes certain provisions designed to protect Receiver and his professionals (including Consultant) in terms of payment and otherwise. To the extent not otherwise addressed in the Appointment Order, the Receiver will use the Receiver's best efforts to ensure that the Retention Order shall specifically provide that: (i) Consultant is being retained by the Receiver; (ii) the payment of all fees and reimbursement of expenses hereunder to Consultant shall be paid as such amounts are administrative expenses of the Receivership Estate with priority over all other estate obligations, shall be free and clear of all liens, claims and encumbrances and shall be included in a carve-out from Lender's collateral under the Appointment Order; (iii) all such payments of fees and reimbursement of expenses shall be made without further order of the Court and in accordance with this Agreement and the Appointment Order; *(iv) except as required under Section 3(c) of this Agreement, Consultant is not required to maintain time records or file interim or final fee applications; and (v) Consultant is authorized to provide the Services without the necessity of compliance with any federal, state, or local statute or ordinance, contractual provision or licensing requirement affecting liquidation or auction sales, or regulating advertising or posting of signage.* If the Retention Order is not entered on or before March 1, 2026, unless said date is extended in writing by the Consultant in its sole discretion, the Consultant may terminate this Agreement at any time thereafter. If this Agreement is so terminated, Consultant reserves the right to seek a substantial contribution claim against the Receivership Estate, any party asserting a lien on the Assets, including but not limited to the Real Property, and the Borrower's Receivership Estate for any rights or obligations incurred or accrued prior to such termination.

\* \* \*

**8.     Exclusive.** During this Agreement's term, the Consultant has the sole and exclusive authority and right to perform all Services outlined herein for the Assets and the Real Property. During this Agreement's term, all relevant inquiries regarding the Assets, including but not limited to the Real Property, made to the Receiver, his representatives, or related parties to the Receiver or the Borrower shall be promptly directed to the Consultant; and the Receiver shall advise the Consultant of all persons making such inquiries. None of the Services provided by the Consultant are to be construed as legal advice, provided however that Consultant shall be relied upon to provide value and operational advice to Receiver. The Receiver shall seek the advice of an attorney regarding the Receiver's legal rights and obligations. *The Consultant shall have the exclusive right to sell the*

20

*Assets, including but not limited to the Real Property, during this Agreement's term and all negotiations shall be conducted through the Consultant in consultation with the Receiver and the Receiver's counsel, or, at the Receiver's sole option, directly by the Receiver.*
(Emphasis added).

**C.     ORDER GRANTING THE APPLICATION TO APPOINT GORDON BROTHERS REALTY SERVICES, LLC AS EXCLUSIVE SALES AND ADVISORY AGENT**

On February 18, 2026, the Receiver's *Application to Appoint Gordon Brothers Realty Services, LLC as Exclusive Sales and Advisory Agent* was granted by this Court. In the *Order Granting the Application to Appoint Gordon Brothers Realty Services, LLC as Exclusive Sales and Advisory Agent,* the Court stated, in relevant part:

> 1.     The Receiver requires the services of experienced professionals as a real estate sales consultant and advisory agent to represent him in carrying out his duties under the <u>Appointment Order</u> (Doc. 41, PageID # 1267), and otherwise applicable law, in circumstances to evaluate and maximize the value of the Receivership and the Property, including a potential sale thereof.
>
> 2.     Gordon Brothers is qualified to undertake the representation and has indicated a willingness to act on behalf of the Receiver in such capacity and the terms (including compensation) of the Consulting Agreement are fair and reasonable in this case and should be approved.
>
> * * *
>
> **NOW, THEREFORE, IT IS ORDERED THAT:**
>
> 1.     Subject to the terms of this Order, the Application before the Court is granted and the terms of the Consulting Agreement are approved and incorporated herein.
>
> 2.     The Receiver is authorized to retain and employ Gordon Brothers Realty Services, LLC as his sales advisory agent in this case, effective as of the date of the Application, to perform the real estate services on and according to the terms and conditions included within the Consulting Agreement attached to the Application as **Exhibit 1.**
>
> 3.     Consistent with the terms of the Appointment Order, Gordon Brothers Realty Services, LLC shall seek compensation in a manner consistent with the process established within the Application, the Appointment Order and Consulting Agreement.

21

**D.  OHIO STATUTORY LAW:**

R.C. 4735.01, entitled *Real estate broker definitions,* states, in relevant part:

As used in this chapter:

(A)  "Real estate broker" includes any person, partnership, association, limited liability company, limited liability partnership, or corporation, foreign or domestic, who for another, whether pursuant to a power of attorney or otherwise, and who for a fee, commission, or other valuable consideration, or with the intention, or in the expectation, or upon the promise of receiving or collecting a fee, commission, or other valuable consideration does any of the following:

(1)  Sells, exchanges, purchases, rents, or leases, or negotiates the sale, exchange, purchase, rental, or leasing of any real estate;

(2)  Offers, attempts, or agrees to negotiate the sale, exchange, purchase, rental, or leasing of any real estate;

(3)  Lists, or offers, attempts, or agrees to list, or auctions, or offers, attempts, or agrees to auction, any real estate;

(4)  Buys or offers to buy, sells or offers to sell, or otherwise deals in options on real estate;

(5)  Operates, manages, or rents, or offers or attempts to operate, manage, or rent, other than as custodian, caretaker, or janitor, any building or portions of buildings to the public as tenants;

(6)  Advertises or holds self out as engaged in the business of selling, exchanging, purchasing, renting, or leasing real estate;

(7)  Directs or assists in the procuring of prospects or the negotiation of any transaction, other than mortgage financing, which does or is calculated to result in the sale, exchange, leasing, or renting of any real estate;

(8)  Is engaged in the business of charging an advance fee or contracting for collection of a fee in connection with any contract whereby the broker undertakes primarily to promote the sale, exchange, purchase, rental, or leasing of real estate through its listing in a publication issued primarily for such purpose, or for referral of information concerning such real estate to brokers, or both, except that this division does not apply to a publisher of listings or compilations of sales of real estate by their owners;

* * *

22

(H)     Any person, partnership, association, limited liability company, limited liability partnership, or corporation, who, for another, in consideration of compensation, by fee, commission, salary, or otherwise, or with the intention, in the expectation, or upon the promise of receiving or collecting a fee, does, or offers, attempts, or agrees to engage in, any single act or transaction contained in the definition of a real estate broker, whether an act is an incidental part of a transaction, or the entire transaction, shall be constituted a real estate broker or real estate salesperson under this chapter.

* * *

(I)(1)   The terms "real estate broker," "real estate salesperson," "foreign real estate dealer," and "foreign real estate salesperson" do not include a person, partnership, association, limited liability company, limited liability partnership, or corporation, or the regular employees thereof, who perform any of the acts or transactions specified or comprehended in division (A) of this section, whether or not for, or with the intention, in expectation, or upon the promise of receiving or collecting a fee, commission, or other valuable consideration:

> (a)     With reference to real estate situated in this state owned by such person, partnership, association, limited liability company, limited liability partnership, or corporation, or acquired on its own account in the regular course of, or as an incident to the management of the property and the investment in it;
>
> **(b)**     As receiver or trustee in bankruptcy, as guardian, executor, administrator, trustee, assignee, commissioner, or any person doing the things mentioned in this section, under authority or appointment of, or incident to a proceeding in, any court, or as a bona fide public officer, or as executor, trustee, or other bona fide fiduciary under any trust agreement, deed of trust, will, or other instrument that has been executed in good faith creating a like bona fide fiduciary obligation;
>
> * * *
>
> (g)     As a person who engages in the sale of commercial real estate pursuant to the requirements of section 4735.022 of the Revised Code;

* * *

**(R)**     ***"Commercial real estate" means any parcel of real estate in this state other than real estate containing one to four residential units.***

23

"Commercial real estate" does not include single-family residential units such as condominiums, townhouses, manufactured homes, or homes in a subdivision when sold, leased, or otherwise conveyed on a unit-by-unit basis, even when those units are a part of a larger building or parcel of real estate containing more than four residential units.

**(S)** ***"Out-of-state commercial broker" includes any person, partnership, association, limited liability company, limited liability partnership, or corporation that is licensed to do business as a real estate broker in a jurisdiction other than Ohio.***

(T) "Out-of-state commercial salesperson" includes any person affiliated with an out-of-state commercial broker who is not licensed as a real estate salesperson in Ohio.

(U) "Exclusive right to sell or lease listing agreement" means an agency agreement between a seller and broker that meets the requirements of section 4735.55 of the Revised Code and does both of the following:

> (1) Grants the broker the exclusive right to represent the seller in the sale or lease of the seller's property;

> (2) Provides the broker will be compensated if the broker, the seller, or any other person or entity produces a purchaser or tenant in accordance with the terms specified in the listing agreement or if the property is sold or leased during the term of the listing agreement to anyone other than to specifically exempted persons or entities.

(V) "Exclusive agency agreement" means an agency agreement between a seller and broker that meets the requirements of section 4735.55 of the Revised Code and does both of the following:

> (1) Grants the broker the exclusive right to represent the seller in the sale or lease of the seller's property;

> (2) Provides the broker will be compensated if the broker or any other person or entity produces a purchaser or tenant in accordance with the terms specified in the listing agreement or if the property is sold or leased during the term of the listing agreement, unless the property is sold or leased solely through the efforts of the seller or to the specifically exempted persons or entities.

> * * *

(Emphasis added).

24

Thus, R.C. 4735.01 excepts "a person who engages in the sale of commercial real estate pursuant to the requirements of section 4735.022 of the Revised Code" from the statutory definitions of, among others, the term "real estate broker".

R.C. 4735.02, entitled *Requirement of license,* states:

> (A)  ***Except as provided in section 4735.022 of the Revised Code,*** no person, partnership, association, limited liability company, limited liability partnership, or corporation shall act as a real estate broker or real estate salesperson, or advertise or assume to act as such, without first being licensed as provided in this chapter. No person, partnership, association, limited liability company, limited liability partnership, or corporation shall provide services that require a license under this chapter if the licensee's license is inactive, suspended, resigned, or a broker's license on deposit, or if the license has been revoked. Nothing contained in this chapter shall be construed as authorizing a real estate broker or salesperson to perform any service constituting the practice of law.
>
> (B)  No partnership, association, limited liability company, limited liability partnership, or corporation holding a real estate license shall employ as an officer, director, manager, or principal employee any person previously holding a license as a real estate broker, real estate salesperson, foreign real estate dealer, or foreign real estate salesperson, whose license has been placed in inactive or resigned status, or is suspended, or revoked and who has not thereafter reactivated the license or received a new license.

Accordingly, the R.C. 4735.02 requirement that "no person, . . . or corporation shall act as a real estate broker or real estate salesperson, or advertise or assume to act as such, without first being licensed as provided in this chapter" includes an exception "as provided in 4735.022 of the Revised Code."

R.C. 4735.022, entitled *Nonresident commercial brokers and salespersons,* states:

> (A)  An out-of-state commercial broker, for a fee, commission, or other valuable consideration, or in the expectation, or upon the promise of receiving or collecting a fee, commission, or other valuable consideration, may perform those acts that require a license under this chapter, with respect to commercial real estate, provided that the out-of-state commercial broker does all of the following:
>
> > (1)  Works in cooperation with an Ohio real estate broker who holds a valid, active license issued under this chapter;

25

(2)     Enters into a written agreement with the Ohio broker described in division (A)(1) of this section that includes the terms of cooperation and compensation and a statement that the out-of-state commercial broker and its agents will agree to adhere to the laws of Ohio;

(3)     Furnishes the Ohio broker described in division (A)(1) of this section with a copy of the out-of-state commercial broker's current certificate of good standing from any jurisdiction where the out-of-state commercial broker maintains an active real estate license;

(4)     Files an irrevocable written consent with the Ohio broker described in division (A)(1) of this section that legal actions arising out of the conduct of the out-of-state commercial broker or its agents may be commenced against the out-of-state commercial broker in the court of proper jurisdiction of any county in Ohio where the cause of action arises or where the plaintiff resides;

(5)     Includes the name of the Ohio broker described in division (A)(1) of this section on all advertising in accordance with section 4735.16 of the Revised Code;

(6)     Deposits all escrow funds, security deposits, and other money received by either the out-of-state commercial broker or Ohio broker described in division (A)(1) of this section in trust or special accounts maintained by the Ohio broker;

(7)     Deposits all documentation required by this section and records and documents related to the transaction with the Ohio broker described in division (A)(1) of this section.

The Ohio broker described in division (A)(1) of this section shall retain the documentation that is provided by the out-of-state commercial broker as required under division (A)(7) of this section, and the records and documents related to a transaction, for a period of three years after the date the documentation is provided, or the transaction occurred, as appropriate.

(B)     An out-of-state commercial salesperson may perform those acts that require a real estate salesperson license under this chapter with respect to commercial real estate, provided that the out-of-state commercial salesperson meets all of the following requirements:

(1)     Is licensed with and works under the direct supervision of the out-of-state commercial broker;

(2)     The out-of-state commercial broker with whom the salesperson is associated meets all of the requirements of division (A) of this section;

(3) Provides the Ohio broker who is working in cooperation with the out-of-state broker with whom the salesperson is associated, with a copy of the commercial salesperson's current certificate of good standing from the jurisdiction where the out-of-state commercial salesperson maintains an active real estate license in connection with the out-of-state commercial broker;

(4) Collects money, including commissions, deposits, payments, rentals, or otherwise, only in the name of and with the consent of the out-of-state commercial broker under whom the out-of-state commercial salesperson is licensed.

* * *

(D) A person, partnership, association, limited liability company, limited liability partnership, or corporation licensed in a jurisdiction where there is no legal distinction between a real estate broker license and a real estate salesperson license must meet the requirements of division (A) of this section before engaging in any activity described in this section that requires a real estate broker license in this state.

Pursuant to R.C. 4735.022, an "out-of-state commercial broker[1]" "may perform those acts that require a license under this chapter, with respect to commercial real estate, provided that the out-of-state broker does all of the following:

**(1) *Works in cooperation with an Ohio real estate broker who holds a valid, active license issued under this chapter*;**

**(2) *Enters into a written agreement with the Ohio broker described in division (A)(1) of this section that includes the terms of cooperation and compensation and a statement that the out-of-state commercial broker and its agents will agree to adhere to the laws of Ohio*;**

**(3) *Furnishes the Ohio broker described in division (A)(1) of this section with a copy of the out-of-state commercial broker's current certificate of good standing from any jurisdiction where the out-of-state commercial broker maintains an active real estate license*;**

---

[1] The term "[o]ut-of-state commercial broker" includes any person, partnership, association, limited liability company, limited liability partnership, or corporation that is licensed to do business as a real estate broker in a jurisdiction other than Ohio. *See,* R.C. 4735.01(S). Therefore, if Gordon Brothers is a "partnership, association, limited liability company, limited liability partnership, or corporation that is licensed to do business as a real estate broker in a jurisdiction other than Ohio", then R.C. 4735.022 would apply to it.

27

**(4)** *Files an irrevocable written consent with the Ohio broker described in division (A)(1) of this section that legal actions arising out of the conduct of the out-of-state commercial broker or its agents may be commenced against the out-of-state commercial broker in the court of proper jurisdiction of any county in Ohio where the cause of action arises or where the plaintiff resides;*

**(5)** *Includes the name of the Ohio broker described in division (A)(1) of this section on all advertising in accordance with section 4735.16 of the Revised Code;*

**(6)** *Deposits all escrow funds, security deposits, and other money received by either the out-of-state commercial broker or Ohio broker described in division (A)(1) of this section in trust or special accounts maintained by the Ohio broker;*

**(7)** *Deposits all documentation required by this section and records and documents related to the transaction with the Ohio broker described in division (A)(1) of this section.*

The Ohio broker described in division (A)(1) of this section shall retain the documentation that is provided by the out-of-state commercial broker as required under division (A)(7) of this section, and the records and documents related to a transaction, for a period of three years after the date the documentation is provided, or the transaction occurred, as appropriate.

(Emphasis added).

R.C. 4735.16, entitled *Sign on business premises; advertising,* states:

(A) Every real estate broker licensed under this chapter shall erect or maintain a sign on the business premises plainly stating that the licensee is a real estate broker. If the real estate broker maintains one or more branch offices, the real estate broker shall erect or maintain a sign at each branch office plainly stating that the licensee is a real estate broker.

(B)

**(1)** *Any licensed real estate broker or salesperson who advertises to buy, sell, exchange, or lease real estate, or to engage in any act regulated by this chapter, with respect to property the licensee does not own, shall be identified in the advertisement by name and indicate the name of the brokerage with which the licensee is affiliated.*

\* \* \*

**(5)** *If any real estate broker or real estate salesperson advertises in a manner other than as provided in this section or the rules adopted under this section, that advertisement is prima-facie evidence of a violation under division (A)(21) of section 4735.18 of the Revised Code.*

28

\* \* \*

**E.**  **ANALYSIS:**

Defendants raise the issue of the licensure, or lack thereof, of Gordon Brothers Realty

Services, LLC in Ohio, because:

> (a)  This Court has issued a February 18, 2026 *Order Granting the Application to Appoint Gordon Brothers Realty Services, LLC as Exclusive Sales and Advisory Agent*;
>
> (b)  By contract with the Receiver, Gordon Brothers Realty Services, LLC is to receive "an amount equal to six (6.0%) percent of the Gross Proceeds . . . of any Transaction . . . involving all or any portion of the Assets, which fee shall be paid to the Consultant in the form of a   buyer's premium as soon as practical upon the closing of a  Transaction (the "Buyer's Premium"); and
>
> (c)  Pursuant to R.C. 4735.022, assuming arguendo that Gordon Brothers Realty Services, LLC and its involvement as a "consultant" to Receiver herein constitutes an "out-of-state commercial broker", Gordon Brothers Realty Services, LLC may be required to "[w]ork[] in cooperation with an Ohio real estate broker who holds a valid, active license issued under this chapter", pursuant to R.C. 4735.022(A)(1) and further may be required to satisfy the factors set forth in R.C. 4735.022(A)(2) - (A)(7) and the may further be required to satisfy the factors set forth in R.C. 4735.022(B)(1) - (4).

In Receiver's motion, Receiver has asserted, in relevant part, that:

> 36.  However, given the exceptional scale and condition of the Property, Receiver and GB recognize that a local entity (either via a potential purchaser, developer, or contractor) may be well-suited to ensure the maximization of the Property, given its unique characteristics.
>
> 37.  Certainly, this is precisely why the Consulting Agreement entered into with GB, and approved by this Court, expressly provides the sharing of fee (buyer's premium) for outside brokers, including, without limitation, a local broker. This specifically negotiated term was essential to Receiver as Receiver recognizes that outside involvement and canvassing of all interested parties or potential purchasers is necessary and pivotal to generate the maximum value for the Property.

29

Receiver has, therefore, addressed the possibility that Receiver and/or Gordon Brothers *may* contract with a local broker to effectuate the potential sale of the Property.

Defendants now assert that in any Order setting forth the process and procedures by which Receiver can seek the sale of the Property that this Court may issue, this Court should require the use of a local broker unless Receiver and/or Gordon Brothers Realty Services, LLC can show cause to this Court why a local broker is not statutorily required in these circumstances. Further, to the extent that Gordon Brothers Realty Services, LLC engages a local real estate broker or agent, Gordon Brothers Realty Services, LLC and any such local broker or agent should not be entitled to any commission/fees cumulatively in excess of the six percent (6%) authorized by this Court in its Order appointing Gordon Brothers Realty Services, LLC.

WHEREFORE, Defendants H.H. Cleveland Huntington, L.P. and Frank T. Sinito hereby oppose *Receiver's Motion for (I) Sale of Receivership Property; (II) Acknowledge Credit Bid Rights; and (III) Set Sales Procedures to Facilitate Requested Sale.*

Respectfully submitted,

/s/ *Larry W. Zukerman*
LARRY W. ZUKERMAN, Esq. (0029498)
S. MICHAEL LEAR, Esq. (0041544)
ZUKERMAN, LEAR, MURRAY & BROWN, CO. L.P.A.
3912 Prospect Avenue East
Cleveland, Ohio 44115
(216) 696-0900 | fax: (216) 696-8800
lwz@zukerman-law.com
sml@zukerman-law.com
*Counsel for Defendants HH Cleveland Huntington, L.P. and Frank T. Sinito*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing was filed electronically on April 23, 2026 and a copy of the foregoing was served via the Court's ECF system on all ECF participants registered in the case at the email address registered with the Court. The undersigned further certifies that a true and accurate copy of the foregoing was served upon all parties of record on April 23, 2026 as follows:

Via email upon the following:

Timothy M. Reardon, Esq.
Matthew G. Vansuch, Esq.
Roetzel & Andress LPA
6550 Seville Dr., Ste. B,
Canfield, OH 44406
TReardon@ralaw.com | MVansuch@ralaw.com
*Counsel for Plaintiff Deutsche Bank AG, New York Branch*

Christopher W. Peer, Esq.
Matthew N. Danese, Esq.
Malorie A. Alverson, Esq.
Emily M. Frohman, Esq.
Dickens Herzer Panza
35765 Chester Road
Avon, Ohio 44011-1262
CPeer@WickensLaw.com
MDanese@WickensLaw.com
MAlverson@WickensLaw.com
EFrohman@WickensLaw.com
*Counsel for Receiver*

And via regular U.S. mail, postage prepaid, upon the following:

County of Cuyahoga
c/o Robert D. Manoloff, Esq., Director of Law
2079 East Ninth Street, Cleveland, OH 44115

Brad Cromes
Treasurer of Cuyahoga County
2079 East Ninth Street
Cleveland, OH 44115

/s/ *Larry W. Zukerman*
LARRY W. ZUKERMAN, Esq. (0029498)
S. MICHAEL LEAR, Esq. (0041544)
*Counsel for Defendants HH Cleveland Huntington,*
*L.P. and Frank T. Sinito*

31