IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEUTSCHE BANK AG, NEW YORK BRANCH<br><br>Plaintiff<br><br>v.<br><br>HH CLEVELAND HUNTINGTON, L.P., ET AL.<br><br>Defendants | CASE NO. 1:25-cv-02332<br><br>JUDGE CHARLES E. FLEMING<br><br>MAGISTRATE JUDGE JAMES E. GRIMES JR.<br><br>**REPLY IN SUPPORT OF RECEIVER'S MOTION FOR (I) SALE OF RECEIVERSHIP PROPERTY; (II) ACKNOWLEDGE CREDIT BID RIGHTS; AND (III) SET SALES PROCEDURES TO FACILITATE REQUESTED SALE** |

* * * *

NOW COMES John K. Lane and Inglewood Associates, the duly appointed receiver herein (the "Receiver"), over the real property located at 925 Euclid Avenue in the City of Cleveland (PPN 101-36-001, 101-36-002, 101-36-013) (the "Property")[1], by and through counsel, and respectfully submits his Reply in Support of Receiver's *Motion for (I) Sale of*

---

[1] Any term herein undefined shall be given the meaning ascribed to it within Receiver's Motion.

*Receivership Property; (II) Acknowledge Credit Bid Rights; and (III) Set Sales Procedures to Facilitate Requested Sale* ("Receiver's Motion").

Receiver's Motion is carefully measured and designed to protect, preserve, and maximize the Receivership Asset, consistent with the Receiver's charge under this Court's Appointment Order, i.e, to identify and secure the highest and best value for the Receivership Asset for the benefit of all stakeholders. As is clear, Receiver's Motion does not seek final approval of any Sale at this time. Rather, Receiver seeks approval of a sales process that *will culminate in a Sale Hearing*, at which time dissenters can be heard and this Court can authorize a Sale presented by the Receiver and his evaluation of the highest and best value presented for the subject Property. For that threshold reason alone, Defendants' objections are meritless and premature as Defendants argue issues that are not ripe, and should be properly reserved, until such time as a final Sale Hearing occurs.

Although not required by this Court or any statutory authority, the Receiver's Motion brings transparency and legitimacy to the sales process (which is intended to yield value to all stakeholders) and to permit Receiver to work with all stakeholders and parties to generate and identify the highest and best bidder for the Property. The requested Sales Procedures, in conjunction with the Receiver's duties to this Court, accomplish that goal and should be approved.

**A. The Purpose of the Sale.**

Receiver is charged by this Court with maximizing the Receivership Asset, which in turn requires identifying the highest and best bidder for the property. Pursuant to Ohio Revised Code § 2735.04 and the Appointment Order, the Receiver was authorized to take immediate and exclusive control, possession, management, and authority over the property. Doc. 41, PageID #

1269, at ¶4(a).  This includes the authority to take all actions the Receiver deems reasonable and appropriate to prevent waste and safeguard the assets of the property.  *Id*. at ¶4(c).  Further, the Appointment Order expressly provides:

> In accordance with R.C. § 2735.04(D), with the consent of the Plaintiff, and upon further Motion to be filed with the Court and after opportunity given for a hearing. . . .and receipt of a Court order, sell the Property, provided, however that this section shall not restrict or impair the Receiver in any way from marketing the Property for sale and considering strategies and offers to sell the Property.

*Id*.  To fulfill these duties, the Receiver must identify the highest and best bidder to protect the parties, preserve the asset, and maximize value **for the benefit of all stakeholders**.  The Motion and proposed Sales Procedures achieve that objective by instituting a strategy for consideration of the highest and best offer to sell the Property.  The Sales Procedures incorporate the requirements of the Appointment Order and R.C. § 2735.04(D) for a Final Hearing, at which time the consideration of the Receiver's selection of the highest and best value for the Property (resulting from his efforts under the Sale Procedures) will be made by this Court.  This time-tested and true practice is used (with maximizing modifications as appropriate) in bankruptcy sales under 11 U.S.C. §363 routinely (locally and nationally).

Receiver's process includes a negotiated, but expedited timeline[2] because time is of the essence in preserving and maximizing the Receivership Asset.  Simply, balancing the costs of maintaining the Property and the Receivership with efforts to maximize return is a valid

---

[2] Sales completed under Bankruptcy Code Section 363 often occur in under 60 days due to decay and risk to the assets or operations.  In the instant situation, Receiver (with the approval of Plaintiff that is funding maintenance and protection to the subject Property) is seeking to commence a sales process of over 180 days.

consideration under Receiver's authority. Section 2735.04(D)(1) of the Revised Code provides that a receiver may sell property of the receivership estate free and clear of liens, if the sale "is fair to the owner of the property and all other parties with an interest in the property, is reasonable under the circumstances, and will maximize the return from the property to the receivership estate, taking into account the potential cost of holding and operating the property." R.C. § 2735.04(D)(1); *see Lucas v. Reywal Co. Ltd. P'ship*, 118 N.E.3d 505, 511 (Ohio Ct. App. 2019) ("By its express language, R.C. 2735.04(D)(1)(a) sets forth various methods by which a receiver, with court approval, may sell property free and clear of liens.").

Plaintiff, who is funding all costs and expenses of the Receivership, agrees with this approach. As previously explained to Magistrate Grimes during the April 22, 2026 Status Conference, the timeline originally targeted a September Sale Hearing, but was extended to November at Plaintiff's request, tacitly accepting the risks.

Accordingly, any suggestion by Defendants that the Motion is premature is unfounded. To the contrary, both the Receiver and Plaintiff have independently determined that prompt action is necessary to preserve and maximize value, which is consistent with Receiver's authority and charge.

**B. The Receiver's Process Recognizes, and is Compliant with, Statutory Requirements.**

Receiver appreciates all applicable statutory procedures, which are (or will be) satisfied by the proposed sales process. Defendants' objections misconstrue the Receiver's intent. Defendants argue Receiver has failed to comply with the requirements for a final Sale Hearing as required by R.C. § 2735.04. Nothing can be further from the truth. To ensure a transparent process

and in deference to this Court, Receiver has taken an intermediate step in seeking approval of Sales Procedures, which expressly contemplate a final Sale Hearing in November of 2026.

To address several of Defendants' misplaced arguments, Defendants argue that R.C. § 2735.04 requires ten days' notice prior to any sale. In effect, however, Receiver is providing approximately eight months' notice of a public sale[3] process and final Sale Hearing. At the Sale Hearing, interested parties will have had months to consider the Sale, submit their comment, and the Court can then evaluate Receiver's determination of the highest and best value for the Receivership Asset. Accordingly, Defendants' objections regarding lack of a hearing are misplaced.

For the same reason, Defendants' argument regarding a right of redemption is without merit. That right remains intact and may be exercised at any time prior to, and in conjunction with, a Sale. Redemption, which requires payment in full, remains available to Defendants at all times (including today) and would likely extinguish the Receivership and any sale process, should Defendants be able to exercise redemption. Most importantly, and likely impactful for Defendants, Defendants retain the opportunity to bid and become the Successful Bidder under the sales process, such that no rights of Defendants are impaired.

Thus, Defendants' arguments that Receiver has failed to comply with statutory procedures is uninformed and without merit.

---

[3] This is not a private sale process, and any objection on that ground is without merit. Nonetheless, if a viable private sale opportunity arises – whether from Defendants or another interested party – the proposed procedures allow for such consideration, in consultation with Plaintiff, if it represents the highest and best value in Receiver's sole determination. Under any such scenario, Receiver will amend the requested procedures.

**C. A Statement of Value at this Time Would Destroy, Not Create, Value.**

The Sale Procedures exist to set process and create and enhance value. Defendants contend that a statement of value is required. To ask Receiver for a statement of value is counterproductive as the process forces market factors to establish undeniable and provable value.

In addition to not being statutorily required at this time, requiring such a statement now would have a chilling effect on the sales process and undermine the Receiver's ability to obtain the highest and best bid. The purpose of the sales process is for the market – through a public auction – to determine value. The procedures outlined in the Motion establish a structured process, administered by the Receiver and his retained real estate consultant, Gordon Brothers, to maximize value. Given the property's condition and status, as described in the Motion, a premature valuation would likely suppress interest (at least artificially depress value) and reduce potential recovery rather than enhance value.

Importantly, the process presented by Receiver protects all stakeholders, including Defendants and Plaintiff. A stalking horse bidder establishes a minimum bid and promotes an open bidding environment with a committed hard floor, which in turn generates value and opportunity. As Defendants acknowledge, stalking horse arrangements with bid protections often enhance interest in distressed assets and encourage competitive bidding while mitigating risk. Consistent with this framework, any breakup fee and expense reimbursement associated with a stalking horse bidder will be negotiated and evaluated by the Receiver based on the circumstances (language is "up to" not "stipulated" in the Sale Procedures), including whether the bidder is Plaintiff (via credit bid) or Defendants based upon the associated risk.

This process also addresses the possibility of a credit bid by Plaintiff and the designation of a stalking horse bidder. Any bidder is valuable to the process, to suggest Plaintiff cannot bid through the debt it lent to Defendant is absurd. First, Plaintiff's ability to credit bid is not a unilateral decision by the Receiver but must occur within the legal framework. Second, if Plaintiff elects to serve as a stalking horse bidder, it effectively sets a floor on value – an election that belongs to Plaintiff but does not diminish the Receiver's duty to maximize value through competitive bidding.

## D. Flexibility to Amend the Sale Process is Necessary to Maximize Value.

As previously established, the Property is a unique asset – an approximately 1.4 million square foot building with significant scale and complexity. Its near-decade-long vacancy has contributed to deterioration, and although interest exists, potential buyers remain cautious given the size, condition, and history of prior unsuccessful redevelopment efforts. As such, Receiver believes the ability to amend the process is value accretive, not destructive. Receiver's business judgment and judgment of fairness to process is not under examination. Amendment to the process by the neutral party seeking to generate value is typical in distressed sales, especially under Section 363 of the Bankruptcy Code.

Accordingly, the Receiver must retain flexibility to amend the sales process as necessary to respond to market conditions and maximize value for the Receivership Estate.

## E. Defendants Objection to the Sales Procedures Regarding Gordon Brothers is Legally and Procedurally Misplaced.

Defendants object to the Receiver's Motion seeking the establishment of sales procedures on the non-sequitur of licensure concerns regarding Receiver's retained real estate consultant and advisor, Gordon Brothers. Initially, this is merely a collateral attack on this Court's

prior order appointing Gordon Brothers as the real estate advisor and consultant to Receiver. Defendants objected to Gordon Brothers' appointment, and this simply is an attempt to re-litigate Defendants' prior self-serving efforts to have a favored local broker appointed. Nonetheless, it is procedurally untimely and legally irrelevant to Receiver's requested sales procedures. Opening a small window into the marketing that has already occurred, Receiver is pleased to share with the Court that Gordon Brothers' efforts have yielded interest that is local, national and international. While expressions of dollars and value are premature, the reach and scope of Gordon Brothers impact is already bearing fruit for the Receiver, and ultimately all stakeholders.

Moreover, pursuant to this Court's broad equitable powers and the Appointment Order, this Court granted Receiver's application to appoint Gordon Brothers as his real estate advisor and consultant. R.C. § 4735.01 provides, in relevant part, "[t]he terms "real estate broker," "real estate salesperson," "foreign real estate dealer," and "foreign real estate salesperson" do not include" any person acting "[a]s receiver or trustee in bankruptcy, as guardian, executor, administrator, trustee, assignee, commissioner, or any person doing the things mentioned in this section, under authority or appointment of, or incident to a proceeding in, any court[.]" *Id.* Here, as explained in detail in Receiver's requested Sales Procedures, as well in his application to retain Gordon Brothers, Receiver is conducting the Sale of the Property. However, Receiver has determined that Gordon Brothers as an advisor and consultant is necessary to achieve the core principle of this Receivership: to maximize the value of the Property by finding the highest and best bidder to generate benefit for all stakeholders and interested parties, including Defendants. This Court's Appointment Order and R.C. § 2735.04 require Receiver to fulfill his obligations in achieving any Sale which Receiver conducts as contemplated within R.C. § 4735.01.

Notwithstanding issues already decided by this Court, Receiver requests an Order approving his requested Sales Procedures, as necessary to fulfill his duties to this Court to generate the highest and best value for the Property.

Respectfully submitted,


*/s/ Christopher W. Peer*
Christopher W. Peer (No. 0076257)
E-mail CPeer@WickensLaw.com
Matthew N. Danese (No. 0096828)
E-mail MDanese@WickensLaw.com
Malorie A. Alverson (No. 0089279)
E-mail MAlverson@WickensLaw.com
Emily M. Frohman (No. 0099830)
E-mail EFrohman@WickensLaw.com
Docket E-mail Docket@WickensLaw.com
WICKENS HERZER PANZA
35765 Chester Road
Avon, OH 44011-1262
(440) 695-8000 (Main)
(440) 695-8098 (Fax)

ATTORNEYS FOR RECEIVER, JOHN K. LANE

## PROOF OF SERVICE

I HEREBY CERTIFY that on this this 30th day of April, 2026, a copy of the foregoing was served via the Court's ECF system on all ECF participants registered in the case at the email address registered with the Court and via first-class mail, postage prepaid, where the party is not registered in ECF in this case.

*/s/ Christopher W. Peer*
Christopher W. Peer
Matthew N. Danese
Malorie A. Alverson
Emily M. Frohman

*Attorneys for Receiver, John K. Lane*