**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DEUTSCHE BANK AG, NEW YORK BRANCH, | ) ) | CASE NO. 1:25-cv-2332 |
| | ) | JUDGE CHARLES E. FLEMING |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| HH CLEVELAND HUNTINGTON, L.P., *et al.*, | ) ) ) | **MEMORANDUM OPINION AND ORDER ON RECEIVER'S SALES PROCEDURE MOTION** |
| Defendants. | ) ) | |

Before the Court is Receiver John Lane's Motion For (I) Sale of Receivership Property; (II) Acknowledge Credit Bid Rights; and (III) Set Sales Procedures To Facilitate Requested Sale (ECF No. 61) (the "Sale Motion"). Defendants HH Cleveland Huntington, L.P. and Frank Sinito filed an opposition/objections, (ECF No. 65), while Receiver and Plaintiff Deutsche Bank AG, New York Branch both filed replies in support, (ECF Nos. 66, 68). For the reasons discussed below, the Sale Motion is **GRANTED IN PART**.

## I.    BACKGROUND

The Court adopts the extensive factual and procedural background set forth in its January 9, 2026 Memorandum Opinion and Order. (ECF No. 40, PageID #1255–58). On January 9, 2026, the Court issued an order appointing John Lane as receiver over the real property located at 925 Euclid Avenue, Cleveland, Ohio (PPN 101-36-001, 101-36-002, 101-36-013) ("Property"). (ECF No. 41).

On April 9, 2026, Receiver filed the instant Sale Motion. (ECF No. 61). With the Sale Motion, Receiver filed an exhibit setting forth the proposed sale procedures for the Property ("Sale Procedures"), including specific bidding, auction, and other procedures, as well as bidding,

1

auction, and sale deadlines.  (ECF No. 61-1).  The Sale Motion requests that the Court issue an order: "(a) approving the Bidding Procedures for use at the Auction; (b) scheduling the Stalking Horse Bidder deadline; (c) scheduling the Auction; (d) scheduling the Sale Hearing in order to consider the Sale of the Property to the Successful Bidder(s) at the Auction; and (e) granting such other and further relief to which Receiver is justly entitled."  (ECF No. 61, PageID #1524).

On April 23, 2026, Defendants filed an opposition to the Sale Motion.  (ECF No. 65). Defendants argue that the Sale Motion is premature and then set forth specific objections to the Sale Procedures.  (ECF No. 65, PageID #1581–92).  Defendants separately raise issues concerning the licensure of Gordon Brothers Realty Services, LLC, a firm retained by Receiver to provide real estate consulting services.  (*Id.* at PageID #1593–05).  On April 30, 2026, Receiver and Plaintiff filed respective replies in support of the Sale Motion.  (ECF Nos. 66, 68).

As part of their opposition, Defendants requested an oral hearing pursuant to Ohio Rev. Code § 2735.04(D)(2)(c).  (*Id.* at PageID #1578–79).  On May 8, 2026, the Court granted Defendants' request and scheduled a Motion Hearing for May 14, 2026.  (ECF No. 69).  At the May 14, 2026 Motion Hearing, testimony of Receiver was taken and Receiver's exhibit 200 was admitted.  (Minutes of proceedings [non-document] dated May 15, 2026).

On May 20, 2026, the Court ordered Receiver and Plaintiff to file supplemental briefing addressing: (i) whether Receiver's proposed sale procedures (ECF No. 61-1) for the Sale Motion qualify as a public sale or private sale under 28 U.S.C. § 2001(a) or (b); and (ii) how the proposed sale procedures comply with the requirements of § 2001.  (ECF No. 75).  On June 3, 2026, Receiver and Plaintiff filed their respective supplemental briefs.  (ECF Nos. 76, 77).  Defendants responded to the supplemental briefs on June 17, 2026.  (ECF No. 82).

**III.     LAW AND ANALYSIS**

As an initial matter, the Court declines to address the arguments raised in Defendants' opposition regarding the licensure of Gordon Brothers Realty Services, LLC.  First, the issue is irrelevant with respect to the Sale Motion and raising it in an opposition brief is improper.  Second, this issue should have been raised earlier.  On January 28, 2026, Receiver filed an Application to Appoint Gordon Brothers Realty Services, LLC as Exclusive Sales and Advisory Agent ("Application").  (ECF No. 51).  Defendants filed an opposition to that Motion but failed to raise any issues related to licensure.  (ECF No. 54).  Moreover, after Magistrate Judge James Grimes, Jr. issued an order granting the Application, (ECF No. 57), Defendants did not file any objection or motion for reconsideration.  Based on all of these considerations, the Court finds that the issue lacks merit and is not timely or properly raised.  The Court will now consider the specific objections raised by Defendants as to the Sale Procedures provided by Receiver.

**A.     Sale Motion Premature**

Defendants object that "a sale of the property at this time and/or pursuant to Receiver's proposed Sale Procedures may compromise tax credits that add value to the property and, accordingly, a sale pursuant to Receiver's proposed timeline may not maximize the value of the property."  (ECF No. 65, PageID #1581).  The Court finds this objection unpersuasive because Defendants provide no explanation or argument as to why the tax credits will be compromised and simply speculate that there is a *possibility* the tax credits might be compromised.  Thus, the Court **OVERRULES** this objection.

### B.  Failure to Provide Evidence of Property Value

Defendant object that Receiver has failed to provide evidence of the value of property and should be compelled to provide such evidence pursuant to Ohio Rev. Code § 2735.04(D)(1)(a) and (b).  (ECF No. 65, PageID #1581–85).   These provisions state:

> (D)(1)(a) Subject to the approval and supervision of the court and the requirements of this section, a receiver may sell property free and clear of liens by private sale pursuant to a written contract between the receiver and the prospective purchaser, by private auction, by public auction, or by any other method that the court determines is fair to the owner of the property and all other parties with an interest in the property, is reasonable under the circumstances, and will maximize the return from the property to the receivership estate, taking into account the potential cost of holding and operating the property.
>
> (b) Before entering an order authorizing the sale of the property by the receiver, the court may require that the receiver provide evidence of the value of the property. That valuation may be provided by any evidence that the court determines is appropriate.  In a public or private auction, the court may establish a minimum bid.

Ohio Rev. Code § 2735.04(D)(1)(a)-(b).  Defendants argue that the Court should compel Receiver to provide evidence of the Property value because it would permit the Court and all interested parties to determine whether any future sale is reasonable and would maximize any sale.  (ECF No. 65, PageID #1585).

In response, Receiver argues that the Sale Procedures set forth a process that will create and enhance the value of the Property and requiring a statement of value at this time would have a chilling effect on the sales process and inhibit the ability to obtain the highest and best bid.  (ECF No. 66, PageID #1612 ("Given the property's condition and status, as described in the Motion, a premature valuation would likely suppress interest (at least artificially depress value) and reduce potential recovery rather than enhance value.")).  At the Motion Hearing, Defendants questioned Receiver about the Court's ability to order valuation information, and he responded that he

4

disagreed with using valuations to determine true value and instead preferred to let the market speak as to the value. (ECF No. 74, PageID #1751–51).

Having reviewed the parties' arguments and the record, the Court **OVERRULES** this objection and will not require Receiver to provide evidence of the Property's value at this time. First, § 2735.04(D)(1)(b) states that the Court *may* require the receiver to provide evidence of the value of the property, leaving the matter to the Court's discretion. Second, Defendants have provided no evidence that Receiver's preferred approach and the Sale Procedures will not maximize a return on the Property or that failing to provide initial valuation information in this instance will be detrimental to the sales process.

### C.     Requirements of 28 U.S.C. § 2001

Defendants argue that the Sale Procedures describe a private sale process and object to the lack of procedural safeguards for private sales set forth under 28 U.S.C. § 2001(b). (ECF No. 65, PageID #1585–86). In their respective supplemental briefs, Receiver and Plaintiff both argue that the Sale Procedures set out proposed procedures for a public sale that comply with the requirements under 28 U.S.C. § 2001(a). (ECF No. 76, PageID #1781–87; ECF No. 77, PageID #1792–96). They also argue that any objection based on § 2001(b) is premature because if Receiver elects to amend the Sale Procedures and pursue a private sale, he shall have to move the Court for approval under 28 U.S.C. § 2001(b). (ECF No. 76, PageID #1787–89; ECF No. 77, PageID #1796). Defendants respond that some of the Sale Procedures have features "that undermine public character and invite private-sale risks", namely: (i) the stalking-horse and qualified bidder mechanisms; (ii) the flexibility to amend to a "private sale"; and (iii) limited public exposure of the Property. (ECF No. 82, PageID #1871). They then argue that Receiver's ability

to shift to a private sale creates a risk of a shift to a private sale, which necessitates the procedural protections of § 2001(b) at this time.  (*Id.* at PageID #1872–73).

The federal statute at issue, 28 U.S.C. § 2001, governs the sale of real property in a court-ordered receivership, with § 2001(a) governing public sales and § 2001(b) governing private sales. Subsection (b) provides:

> After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby.  Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities.  No private sale shall be confirmed at a price less than two-thirds of the appraised value. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale.

Thus, any private sale of real property in a court-ordered receivership requires: (i) the appointment three appraisers; (ii) no confirmation of a sale for less than two-thirds of the appraised value; (iii) public notice; and (iv) no sale confirmation if a bona fide offer guarantees a 10-percent increase.  *See United States v. Scherer*, 532 F. Supp. 3d 485, 489 (S.D. Ohio 2021); *Huntington Nat'l Bank v. Najero, Inc.*, No. 13-11632, 2014 U.S. Dist. LEXIS 152474, at *3–4 (E.D. Mich. Oct. 27, 2014).

First, the Court finds that the Sales Procedures currently set forth procedures for a public sale.  Defendants' response brief essentially concedes this point and instead argues that the Court should still amend the Sale Procedures to provide the procedural protections under § 2001(b) (*e.g.*, appoint three appraisers) as a precaution.  Moreover, although the statute does not define public

sale, the Sale Procedures outline the specific deadlines (bid deadline, auction, notice of sale, etc.), the bidding process and requirements, and the auction process; all of which indicate a public sale.

Second, the Court finds that the Sale Procedures need not be amended at this time to provide the protections under § 2001(b) for private sales.  Even though the Sale Procedures permit the Receiver to amend the process to pursue a private sale, Receiver will have to seek permission of the Court to conduct such a private sale.  At that time, the Court would ensure that any private sale complied with the procedural requirements under § 2001(b).  Defendants' concerns are therefore premature.  Accordingly, the Court **OVERRULES** this objection.  Out of caution, the Court notes that it will include language in this Order that states any amendment of the sales process from a public to a private sale will require the Court's approval and compliance with § 2001(b).

### D.    Ability to Amend Procedures

Defendants object to the language in the Sale Procedures that empowers Receiver with the ability to amend the Sale Procedures without motion and by merely providing notice to the Court and interested parties.  (ECF No. 65, PageID #1586).  Defendants argue that this would give Receiver carte blanche to amend the Sale Procedures as he sees fit and avoid judicial oversight. (*Id.* at PageID #1586–87).  Receiver responds that his ability to amend the process is "necessary to respond to market conditions and maximize value for the [Property]" and will help increase the value of the Property.  (ECF No. 66, PageID #1613).

Defendants' objection misconstrues the cited portion of the Sale Procedures and leaves out very important context.  The provision cited by Defendants more fully states:

> If Receiver names and identifies a bidder to serve as Stalking Horse Bidder on or before the Stalking Horse Identification Deadline, then the Receiver shall be entitled to amend these Sale Procedures **without motion and by providing notice to the Court and all parties known to have an interest in purchasing the Assets,**

7

(the "Notice to Designate Stalking Horse Bidder") to the extent necessary, to designate such party as the stalking horse bidder (a "Stalking Horse Bidder") for the Assets and authorize and approve (i) a break-up fee (and any related expense payments) (the "Break Up Fee(s)") up to 3% of the purchase price for the Assets in the Stalking Horse Bid payable to Stalking Horse Bidder should Stalking Horse Bidder NOT be determined to have the highest and best bid and be named Successful Bidder; (ii) an expense reimbursement of up to $200,000.00 payable to Stalking Horse Bidder should Stalking Horse Bidder NOT be determined to have the highest and best bid and be named Successful Bidder; and (iii) the designation of such bidder along with any amendments to these Sale Procedures necessitated with the identification of a Stalking Horse Bidder.

(ECF No. 61-1, PageID #1528).  Thus, the language objected to does not provide Receiver with "carte blanche" to change any and all procedures; the language limits amendments to those that are "necessary" for the purposes of designating a "Stalking Horse Bidder" before the deadline.

That said, the Court does share some concerns with the broad language found elsewhere in the Sale Procedures about Receiver's general ability to modify/amend the Sale Procedures.  To alleviate those concerns, the Court will include language that any amendment, modification, or change to the Sale Procedures is ultimately subject to the Court's approval at the conclusion of the Final Sale Hearing and/or entry of a Final Sale Order.  Accordingly, this objection is **SUSTAINED IN PART**.

### E.    Use of Stalking Horse Bidder/Plaintiff as Stalking Horse Bidder

Defendants object to provisions in the Sale Procedures relating to the use of a Stalking Horse Bidder, including the proposed "Break Up Fee" of "up to 3% of the purchase price of the Assets in the Stalking Horse Bid" and the proposed expense reimbursement of up to $200,000, arguing that Receiver has offered no justification for such provisions.  (ECF No. 65, PageID #1587–90).  They also object to the Sale Procedures permitting Plaintiff to use a credit bid and become the stalking horse bidder.  (*Id.* at PageID #1590–91).

8

Receiver responds that "[a] stalking horse bidder establishes a minimum bid and promotes an open bidding environment with a committed hard floor, which in turn generates value and opportunity. . . . [S]talking horse arrangements with bid protections often enhance interest in distressed assets and encourage competitive bidding while mitigating risk." (ECF No. 66, PageID #1612).  Receiver also argues that the provisions allowing for a breakup fee, expense reimbursement, and Plaintiff being a potential stalking horse bidder are not detrimental and will maximize the Property's value:

> Consistent with this framework, any breakup fee and expense reimbursement associated with a stalking horse bidder will be negotiated and evaluated by the Receiver based on the circumstances (language is "up to" not "stipulated" in the Sale Procedures), including whether the bidder is Plaintiff (via credit bid) or Defendants based upon the associated risk.
>
> This process also addresses the possibility of a credit bid by Plaintiff and the designation of a stalking horse bidder. Any bidder is valuable to the process, to suggest Plaintiff cannot bid through the debt it lent to Defendant is absurd.  First, Plaintiff's ability to credit bid is not a unilateral decision by the Receiver but must occur within the legal framework.  Second, if Plaintiff elects to serve as a stalking horse bidder, it effectively sets a floor on value – an election that belongs to Plaintiff but does not diminish the Receiver's duty to maximize value through competitive bidding.

(*Id.* at PageID #1612–13).

Plaintiff responds that the use of a stalking horse bidder and breakup fees are common in the sale process for distressed properties and have been approved by many courts; they also argue that offering a breakup fee and expense reimbursement encourages potential bidders to participate in the sales process and increase competition to drive up bidding.  (ECF No. 68, PageID #1696–97).  Plaintiff notes "Defendants have not explained why an auction *without* the ability for the selection of a Stalking Horse is better for the Property, the Receivership Estate, and the interested parties, including Mr. Sinito." (*Id.* at PageID #1696 (emphasis in original)).  At the

9

Motion Hearing, Receiver testified that the use of a stalking horse bidder was "extremely common" for distressed asset sales.  (ECF No. 74, PageID #1741–42).

Having reviewed the parties' arguments, and testimony at the Motion Hearing, the Court **OVERRULES** Defendants' objections relating to the use of a stalking horse bidder.  Although Defendants would clearly prefer another sales method, they have provided no evidence or legal authority that the use of a stalking horse bidder is abnormal for distressed asset sales such as this, would be improper and detrimental in this instance, and would not maximize the value of the Property.  Receiver has presented his rationale for why using a stalking horse bidder, and having provisions for a breakup fee, expense reimbursement, and Plaintiff acting as the stalking horse bidder would be beneficial to the sales process and help Receiver achieve the highest and best bid for the Property.  The Court finds the use of a stalking horse bidder and the associated provisions in the Sale Procedures to be fair to all parties, reasonable under the circumstances, and consistent with maximizing any return on the Property.

### F.      Equity of Redemption

Defendants object that any order by the Court authorizing Receiver to sell the Property and setting the proposed sale procedures must include language setting forth the statutory time period for parties to exercise equity of redemption pursuant to Ohio Rev. Code § 2735.04(D)(7).  (ECF No. 65, PageID #1591–92).  Plaintiff responds that Defendants are not being denied the ability to exercise the equity of redemption, it would welcome Defendants doing so, and exercising equity of redemption is a separate process.  (ECF No. 68, PageID #1697–98).

Under Ohio Rev. Code § 2735.04(D)(7), "when property is sold by a receiver, the trial court must set a 'reasonable time,' but not less than three days after the sale order, for the owner and all parties possessing an equity of redemption in the property to exercise their equity of

redemption." *Yidi, L.L.C. v. JHB Hotel, L.L.C.*, 2017-Ohio-1285, ¶ 12, 88 N.E.3d 534 (Ohio Ct. App. 2017).  Receiver did not address equity of redemption and Plaintiff does not particularly oppose or object to the inclusion of language about equity of redemption or provide any argument against its inclusion.  Accordingly, the Court **SUSTAINS** this objection and will include language in this Order that sets the "reasonable time" for parties to exercise any equity of redemption and otherwise complies with § 2735.04(D)(7).

### G. Minimum Bid

Defendants' final objection is that the Court should establish a minimum bid for the Property pursuant to Ohio Rev. Code § 2735.04(D)(1)(b).  (ECF No. 65, PageID #1592).  Under Ohio Rev. Code § 2735.04(D)(1)(b), the Court "may establish a minimum bid."  As discussed above, the Court finds that the use of a stalking horse bidder is appropriate, reasonable under the circumstances, and will help maximize any return on the Property.  Receiver has stated that setting a minimum bid would be detrimental to the sales process and Defendants have provided no explanation as to how setting a minimum bid would maximize the value or be more beneficial than the Sale Procedures proposed by Receiver.  Receiver and Plaintiff are incentivized to receive maximum value for the Property, and any fears Defendants might have about a potentially unfair or low sales prices are mitigated by the Court's authority to ultimately approve any sale.  Accordingly, the Court **OVERRULES** this objection.

## IV. CONCLUSION

For the foregoing reasons, the Court, having considered the Motion and the relief requested therein, hereby **FINDS** that: (a) notice of the Motion and the relief requested therein was just and proper and in accordance with all applicable laws and rules including, without limitation, the Appointment Order and Local Rules of this Court; (b)  Plaintiff Deutsche Bank AG, New York

11

Branch is authorized to credit bid; (c) the relief set forth in the Motion, to the extent granted herein, is in the best interests of all Parties and stakeholders to this matter; (d) the Sales Procedures are supported by ample business justification and are reasonable and appropriate under the circumstances; (e) the proposed Sales Procedures are designed to foster an open, competitive, and fair sale process, thereby maximizing the value of the Property; (f) the Sales Procedures are an exercise of the Receiver's sound business judgment; (g) the Sales Procedures are fair and reasonable under the circumstances; (h) Plaintiff has consented to the relief requested herein; (i) Defendants' objections are hereby **OVERRULED IN PART** and **SUSTAINED IN PART**, to the extent discussed above; and (j) the dates and timelines requested in the Motion and set forth in the Sales Procedures are fair and appropriate under the circumstances, subject to the rights of Receiver to make further changes to the Sales Procedures by submitting and serving Notice of the same.

It is hereby **ORDERED**, **ADJUDGED**, and **DECREED** as follows:

1. Capitalized Terms.  Unless otherwise defined or stated herein, all capitalized terms used herein shall have the meanings ascribed to them in the Motion, or Sales Procedures attached to the Motion as **Exhibit 1**, as applicable.

2. Motion Granted.  The Motion (ECF No. 61) is hereby **GRANTED IN PART** as follows: (I) Receiver shall move forward to market and sell the Property; (II) the credit bid rights of Plaintiff Deutsche Bank are approved; and (III) the Sales Procedures attached to this Order as **Exhibit A** are approved.

i. Approval of Sales and Bidding Procedures.  The Sales Procedures attached hereto as **Exhibit A** are approved in all respects, including the form Asset Purchase Agreement.  The

Sales Procedures are solely for the benefit of Receiver and his professionals and nothing contained therein shall create any rights in any other person or Bidder.

ii.       Approval of Stalking Horse Bidder.  The proposed form and manner of notice of the identification and naming of a Stalking Horse Bidder is approved in all respects, including that Receiver may identify and name a Stalking Horse Bidder by notice and without further motion.

iii.      Approval of Auction and Sale.     Receiver is hereby authorized to conduct the Auction and Sale pursuant to the terms, and subject to the conditions, of the Sales Procedures. Receiver is authorized to use the Sales Procedures and his business judgment, in consultation with his professionals and Deutsche Bank (so long as Deutsche Bank is not a potential Bidder), to determine the highest and best offer and opportunity for the Property.  The Auction for the sale of the Property shall be conducted on or about **November 3, 2026, 10:00 A.M. EST**.  The Auction shall be located in Cleveland, Ohio in accordance with the procedures set forth in the Sales Procedures and further determined by the Receiver, in his sole business discretion.

iv.      Final Hearing on the Sale.  A Final Sale Hearing on the Sale of the Property and Assets to the Successful Bidder at the Auction to consider whether to approve the Sale and any other requested relief shall be held on **November 10, 2026, 10:00 A.M. EST**.

v.       Equity of Redemption.  Pursuant to Ohio Rev. Code § 2735.04(D)(7), the owner of the Property or any party who possesses any equity of redemption shall have thirty (30) days from the date of this Order to exercise their equity of redemption in the Property or be forever barred.

vi.      Amendments or Modification.  Receiver may amend, modify, supplement, or change the Sale Procedures at Receiver's discretion as necessary or appropriate to run this sales process, with all terms ultimately being subject to the Court's approval after conclusion of the Final Sale Hearing and entry of a final order confirming the sale.  If Receiver amends the Sale

13

Procedures to pursue a private sale, Receiver must move the Court for the authority to conduct a private sale, pursuant to and in compliance with 28 U.S.C. § 2001(b).

3.      Retention of Jurisdiction.  The Court shall retain jurisdiction to hear and determine all matters arising from or related to implementation of this Sale Procedures Order.

4.      Sale Procedures Order Effective Immediately.    This Sale Procedures Order is effective immediately.

**IT IS SO ORDERED.**

Date: June 30, 2026

_____
**CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**

14